The Western Union Telegraph Company v. Yopst.

Filed April 4, 1889.

No. 12,328.

THE WESTERN UNION TELEGRAPH COMPANY v. YOPST.

TELEGRAPH COMPANY.— *Transmission of Message.—Penalty.—Contract.*—A contract is essential to create a duty, and in order that one may recover the statutory penalty for a breach of duty in the transmission of a telegram, a valid contract must be shown, as the contract is the foundation of the action.

SAME.—*Transmission on Sunday.—Necessity.*—A contract by a telegraph company to transmit a message on Sunday is valid or invalid, owing to the reasonable necessity, or the want of it, for the transmission of the message on that day. For evidence held not sufficient to show a necessity, see opinion.

SAME.—*Nature of Business.* —In determining whether an act is, or is not, one of necessity, it is proper to give just effect to the nature of the business in which the person who does it is engaged.

SAME.— *What Messages May be Sent.*—A telegraph company may not transact ordinary business on Sunday, but it may keep open its offices for the receipt and transmission of messages where a reasonable necessity exists, such as those designed to relieve suffering, avert harm or prevent serious loss.

SAME.—*Complaint.—Notice of Necessity.*—Where a complaint against a tel-

The Western Union Telegraph Company *v.* Yopst.

egraph company to recover a statutory penalty shows that the contract was made on Sunday, the complaint is bad unless the contract is shown to be valid because of the existence of a necessity for the making of the contract on that day, and that the defendant knew of the necessity.

SAME.—*How Notice May be Shown.*—Where the contents of the telegram itself are not sufficient to charge the telegraph company with notice of the necessity for its transmission, the plaintiff must show knowledge by extrinsic facts. A message reading, " Bring forty dollars if you want record," does not show necessity.

SAME.—*Prepayment of Charges.*—Where the agent of a telegraph company declines to receive compensation for transmitting a message, and requests the sender to allow the expense to be paid by the receiver, the company can not escape liability on the ground that compensation was not prepaid.

SAME.—*Notice of Default.—Failure to Give.*—Where a contract is essential to the existence of a duty, and it contains a stipulation requiring the plaintiff to give a written notice of a default, the failure to give the notice will defeat an action to recover a penalty attached to a violation of the duty created by the contract.

SAME.—*When Notice or Demand not Necessary.*—A provision in a contract between a telegraph company and the sender of a message, that " the company will not be liable for damages in any case where the claim for damages is not presented in writing within sixty days after sending the message," applies only to cases where the message is sent, and if there is a failure to transmit, no written notice or demand is required to fix the company's liability.

SAME.—*Evidence.—Declarations of Agent.*—An objection to the admission of the declarations of an agent on the ground that " no other person can bind the company except the one with whom the business is transacted," presents no question as to the nature and scope of the agent's authority, and is not well taken as a general proposition.

From the Cass Circuit Court.

*J. R. Coffroth, T. A. Stuart, D. D. Dykeman, W. T. Wilson* and *G. C. Taber,* for appellant.

*T. J. Tuley* and *D. C. Justice,* for appellee.

ELLIOTT, C. J.—The complaint of the appellee is based upon the statute defining the duties of telegraph companies, and prescribing a penalty for a breach of duty. This penalty the appellee seeks to recover.

The principal objection urged against the complaint is that the telegram was received on Sunday, and that as it

does not appear that there was any necessity for receiving or transmitting it on that day, the contract which underlies the duty is invalid, and hence no recovery can be adjudged.  It is true, as counsel assert, that a contract is essential to create a duty.  *Rogers* v. *Western U. Tel. Co.,* 78 Ind. 169 ;  *Carnahan* v. *Western U. Tel. Co.,* 89 Ind. 526 ; *Western U. Tel. Co.* v. *Wilson,* 108 Ind. 308.  The complaint must be held insufficient, unless there are facts pleaded establishing a valid contract.  Ordinarily a contract made on Sunday is invalid. *Rogers* v. *Western U. Tel. Co., supra,* and cases cited ; *Western U. Tel. Co.* v. *Wilson, supra.*  If, however, there is a necessity shown for receiving or transmitting a message on Sunday, then the contract is valid, and will constitute a sufficient foundation for the duty enjoined upon telegraph companies.

A contract to transmit a message regarding ordinary business which can be transacted as well on any other day as on Sunday, is not within the exception to the general rule that ordinary business shall not be transacted on Sunday ; but there may be facts which will impress it with the character of a work of necessity, and take the transaction out of the general rule.  An emergency requiring immediate action to prevent serious loss or injury may occur in a person's usual vocation which would make the work of delivering and transmitting a telegraphic message one of necessity.  This is the principle asserted in our cases, which hold that work or business, within the scope of a person's usual vocation, may be performed or transacted on Sunday when necessary to preserve property or prevent serious loss.  *Yonoski* v. *State,* 79 Ind. 393 ; *Turner* v. *State,* 67 Ind. 595 ; *Edgerton* v. *State,* 67 Ind. 588 ; *Wilkinson* v. *State,* 59 Ind. 416 ; *Crocket* v. *State,* 33 Ind. 416 ; *Morris* v. *State,* 31 Ind. 189.  The necessity which will excuse one who performs work or does business on Sunday is not required to be absolute or imperious, but it must, nevertheless, be a reasonable one.  It is not possible to give a definition to the word " necessity " that

will fit every case, for what will be just under the facts of one case may be unjust under the facts of another. The statute is intended to secure a quiet Sabbath, and make it a day of rest, on which men shall not be compelled to perform ordinary labor, or permitted to conduct ordinary business; but it is not its purpose to prohibit the performance of work where there is a necessity for its performance in the particular instance, not existing in the usual course of the business of the person who does the act. It punishes persons who work or do business on Sunday, in order to restrain them from transacting business in the ordinary course, but it does not mean to punish a person who does an act on Sunday because the act is necessary to prevent serious loss or injury. Telegraph companies, we judicially know, are permitted to keep open their offices, for the transmission of messages, on Sunday, because there are emergencies, involving sometimes life and sometimes great public and private interests, requiring that messages be transmitted on that day. In many instances it is, as every one knows, of the highest importance and most serious moment that messages should be received and transmitted on Sunday. In determining whether an act is or is not one of necessity, it is proper to give just effect to the nature of the business in which the person who does it is engaged. We must do so here. We know that in many instances the transmission of a message on Sunday may be necessary to prevent great loss, and even to save life; and knowing this we can not do otherwise than hold that the business of telegraphing can not be brought under the same rules as that of a merchant, farmer or mechanic. The merchant who keeps open his shop for business and custom on Sunday the same as on a secular day, by that act violates the law, although he would not necessarily violate it if, upon request, he should sell some article needed at once to prevent serious loss or suffering. The case of a telegraph company is different. It may keep open its offices for the receipt and transmission of messages, where there is a reasonable neces-

sity for transmitting them on that day, although it has no right on that day to do a general business. Messages that may as well be sent on any other day as on Sunday, without causing loss, harm or suffering, it is prohibited from receiving on that day; but messages designed to relieve suffering, avert harm, and prevent serious loss, it may on that day receive and transmit. The view we have taken is not only supported by our own decisions and by those of many other courts, but it is no more than a development of a principle declared by a court which has gone as far as any in the land in enforcing the statutes against Sabbath-breaking. In *Flagg* v. *Inhabitants, etc.*, 4 Cush. 243, that court said: " By the word ' necessity ' in the exception we are not to understand a physical and absolute necessity; but a moral fitness or propriety in the work and labor done, under the circumstances of any particular case, may well be deemed necessity within the statute." It is, as we believe, morally fit and proper that a telegraph company should receive and transmit messages on Sunday, where it is necessary to prevent serious loss. What was said by the court in *McGatrick* v. *Wason*, 4 Ohio St. 566, is peculiarly applicable here: " Nor will it do," said the court, " to limit the word ' necessity ' to those cases of danger to life, health or property, which are beyond human foresight or control. On the contrary, the necessity may grow out of, or indeed be incident to a particular trade or calling, and yet be a case of necessity within the meaning of the act."

We collect and cite a few of the many cases sustaining our conclusion : *Hennersdorf* v. *State*, 25 Tex. App. 597 ; *Ashbrandt* v. *State*, 25 Tex. App. 599 ; *Dixon* v. *State*, 76 Ala. 89 ; *Parmalee* v. *Wilks*, 22 Barb. 539 ; *Murray* v. *Commonwealth*, 24 Pa. St. 270.

As the appellee's complaint shows that the contract was made on Sunday, the burden is upon him to show that a necessity existed for making the contract on that day. *Troewert* v. *Decker*, 51 Wis. 46. This is so, because he seeks to en-

force a penalty inflicted by way of punishment and not given by way of compensation. It is essential to his cause of action that he should show a valid contract. The case is not governed by *Heavenridge* v. *Mondy*, 34 Ind. 28, for here the action is to recover a statutory penalty, and the plaintiff must show an effective' contract in order to bring himself within the terms of the statute on which alone his action is based. Here, too, the act contracted for was within the usual vocation of the telegraph company, and as it was done on Sunday and the contract for its performance made on that day, the contract was *prima facie* invalid. Principle and authority require that, in order to enable the plaintiff to recover a statutory penalty for an act done on Sunday, he should show that the defendant was guilty of a wrong, and to accomplish this it is incumbent upon him to show that the contract was legal. One who procures another to make a contract forbidden by law, ought not to be permitted to avail himself of the contract to enforce a statutory penalty for a breach of duty springing from the contract, unless he shows that there was a necessity for making the contract, and so brings his case within the exception created by the statute.

Where a plaintiff undertakes to plead and avoid a defence, his complaint will be bad if he does not avoid the defence he assumes to state. If he states a valid defence without avoiding it, he destroys his cause of action. He is not bound to anticipate a defence, but if he undertakes to do so and goes no further than to state a defence, he nullifies his complaint. *Locke* v. *Catlett*, 96 Ind. 291, 294; *Keepfer* v. *Force*, 86 Ind. 81; *Reynolds* v. *Copeland*, 71 Ind. 422.

To avoid the defence which the statute forbidding the making of contracts on Sunday creates, it was incumbent upon the plaintiff, after having alleged that the contract was made on Sunday, to plead facts showing that there was a reasonable necessity for making the contract on that day, and that the defendant knew of this necessity. If a defendant enters into a contract prohibited by law, he can not be

compelled to perform it, or to respond in damages to the person with whom he contracts. An illegal contract can not, as between the immediate parties, be the source of a legal right. Where the only road to a recovery is by way of an illegal contract, the courts will not assist the parties to the contract in travelling it, but where there can be a recovery without the aid of the illegal contract, a recovery may be adjudged. *Pape* v. *Wright,* 116 Ind. 502; *Louisville, etc., R. W. Co.* v. *Buck,* 116 Ind. 566. Here, there can be no recovery if the contract was illegal, since the entire right of the plaintiff is founded on the contract, and without it the asserted right can have no legal existence. *Western Union Tel. Co.* v. *Wilson, supra.*

The plaintiff in such a case as this may show a reasonable necessity and notice of that fact from the contents of the telegram itself, or he may show knowledge by extrinsic facts. There may, we say, be cases where the telegram would impart knowledge, but this is not one of them, for there is nothing on the face of the telegram conveying information that there was any necessity for receiving or transmitting it on Sunday; on the contrary, so far as the words of the telegram show, it was an ordinary message that might have been sent on any secular day. If there is any reasonable necessity shown, it is shown by the extrinsic facts averred and not by the words of the telegram, for the language of the telegram is: "Bring forty dollars if you want record."

The demurrer to the complaint is not to each paragraph, but it is addressed to the entire pleading, so that if there is one good paragraph there was no error in overruling the demurrer. We are, therefore, only required to ascertain and decide whether any one of the paragraphs of the complaint is good. As we have said, the contract which lies at the foundation of the action was, as the complaint shows, made on Sunday, and as it was made on that day the complaint is bad, unless it shows two essential facts in avoidance of the statutory condemnation of Sunday contracts; these essential

facts are a reasonable necessity for sending the message, and notice to the company of that necessity. Our opinion is that one of the paragraphs does show a reasonable necessity for receiving and transmitting the message on Sunday, and that the defendant had notice of this fact. Although the allegations upon this point are very vague and indefinite, we adjudge them sufficient on demurrer, since the remedy for uncertainty is by motion, and not by demurrer.

Where the agent of a telegraph company declines to receive compensation for transmitting a message, and requests the sender to allow the expense to be paid by the person to whom the message is sent, the company can not escape liability on the ground that compensation was not paid at the time the message was delivered to the agent by the sender. It is a familiar rule that a party can not escape liability if he, by his own act, makes a tender unnecessary or unavailing. This was the effect of the act of the appellant's agent.

The sixth paragraph of the appellant's answer sets forth the written contract, under the terms of which the message was received. As there was a written contract, it must be regarded as containing the whole agreement of the parties. Both parties are, of course, bound to do what that contract requires. A failure on the part of one to comply with its terms destroys his right to enforce it against the other, or to derive any statutory rights from it. The telegraph company undertook to transmit the message only upon the consideration that the plaintiff should perform his part of the contract. It was bound to do what it agreed, and so was the plaintiff. If the plaintiff failed to do what he undertook to do, he had no rights under the contract, and, as the cases we have referred to hold, if he had no rights under the contract he can not recover the statutory penalty. To invest him with the right to recover the penalty he must have a valid contract, and must do what he agreed in that contract to do. The contract is not simply blended with his cause of action, but it constitutes its foundation. Where, as here, a duty ex-

ists only by virtue of a contract, a penalty affixed to a breach of that duty can not be recovered unless the party seeking a recovery shows that he has done what the contract requires, for, if he has not, he has no rights under the contract, and in the absence of such rights he can not enforce the statutory penalty. It seems quite clear to us, that, where a right to a statutory penalty depends upon the fact that a contract was entered into creating the duty the breach of which gives a right of action, no right of action can exist unless the plaintiff has himself performed his part of the contract. If it were otherwise, then a party might recover for a breach of duty created by the contract, and yet not be able to enforce the contract. It would be strange, indeed, if a party could collect a statutory penalty for a breach of duty that without the contract could not exist, and yet have no right to maintain an action on the contract, which was the source from which the duty sprung.

It is held in many cases, and none to the contrary have been cited, that a contract requiring notice can not be enforced unless the notice provided for has been given. *Young v. Western U. Tel. Co.*, 65 N. Y. 163 ; *Heimann v. Western U. Tel. Co.*, 57 Wis. 562 ; *Cole v. Western U. Tel. Co.*, 33 Minn. 227 ; *Wolf v. Western U. Tel. Co.*, 62 Pa. St. 83 ; *Western U. Tel. Co. v. McKinney*, 2 Texas Ct. of App. (Willson) sec. 644. In the case last named it was said : " This stipulation was a condition precedent to the appellee's right to recover. * * Until he had performed it he had no cause of action." But our own decisions settle the general question against the appellee. *Western U. Tel. Co. v. Jones*, 95 Ind. 228 (48 Am. R. 713) ; *Western U. Tel. Co. v. Meredith*, 95 Ind. 93 ; *Western U. Tel. Co. v. Wilson, supra.* We conclude that where a contract is essential to the existence of a duty, and it contains a stipulation requiring the plaintiff to give a written notice of a default on the part of the telegraph company, the failure to give the notice required by the con-

tract will defeat an action to recover the penalty attached to a violation of the duty created by the contract.

In holding that the written notice is required, we have not disposed of the questions presented by the answer. Another material question remains, and that is this: Does the contract provide for a written demand in cases where there is no transmission of the message? The provision in the contract is this: " The company will not be liable for damages in any case where the claim for damages is not presented in writing within sixty days after sending the message." The time fixed by the contract is sixty days from the time of sending the message. The contract thus definitely names the time, and in doing this specifies the cases in which the limitation it designates shall apply. By the words of the contract the cases to which the limitation applies are those in which the message is sent. If this be true, and we can not perceive why it is not, then where there is no transmission of the message, but a total failure to transmit, there is no limitation fixed by the contract, and no written notice or demand is required to fix the liability of the company. It is evident from the words of the contract themselves that it is only in cases where the message is sent or transmitted that a written demand is required. There is no valid reason why the words of the contract should be extended in favor of the company to cases which they do not embrace. The limitation is for the benefit of the company and is of its own creation. It has no right, therefore, to ask that the contract be extended for its own benefit beyond the letter of the instrument. Nor is there any ambiguity in the language employed, for it clearly designates the cases in which the limitation shall apply. The company is invested with comprehensive powers and rights, and is by law charged with duties to the public in consideration of the rights and franchises granted to it. It is impressed with a public character, and its duties are similar in many respects to those of a common carrier. *Hockett*

v. *State,* 105 Ind. 250 (55 Am. R. 201). It ought not, therefore, to be permitted to successfully insist that a limitation of its own creation, and established for its own benefit, should be extended beyond the words creating the limitation.

In *Western U. Tel. Co.* v. *Meredith, supra,* there was a failure to transmit and to deliver; here there was an utter failure to transmit, so that the decision in that case does not apply. There was here no effort made to transmit the message. The point as it is here presented did not arise in that case, and it is, therefore, not authoritative. If the company had sent the message but failed to deliver it, the decision referred to would be relevant, but as it did not send the message over the wires the limitation in the contract does not apply, as it is only of force in cases where the message is transmitted, or, in the language of the contract, from the time of " sending the message."

. The breach of duty occurs, as in favor of a plaintiff, when a valid contract is made and there is a failure to do what the contract and the statute require. *Carnahan* v. *Western U. Tel. Co.,* 89 Ind. 526. But the limitation imposed by the corporation does not then take effect, for, to repeat what we have said, that limitation takes effect from the time of sending the message, and if no message is sent no limitation takes effect. ' The limitation, as in favor of the company, is only effective when the company so far does its duty as to transmit the message delivered to it under a valid contract. The rights of the company under the limitation depend entirely upon the contract between the company and the sender of the message. In a proper case it constitutes a defence, but only in such a case. The rights of the sender do not depend upon the limitation, but they may be defeated by it in a case falling within the terms of the contract. In favor of the sender the contract requires both a transmission over the wires and a delivery of the message. *Western U. Tel. Co.* v. *Lindley,* 62 Ind. 371. But the limitation benefits the corporation only when it has in part done its duty; for no

advantage arises from the limitation in case there is a total failure or refusal to do what the law requires.

We need not decide whether the replies to this answer are, or are not, sufficient, for, conceding that they are bad, no benefit will accrue to the appellant, for a bad reply is good enough for a bad answer.

Objections to testimony must be specific. General objections are unavailing. *Ohio, etc., R. W. Co.* v. *Walker,* 113 Ind. 196. Only objections properly made in the trial court can be considered on appeal.

Under these long settled and familiar rules the only specific objection to the testimony of the plaintiff as to declarations made by Dusener, the agent of the appellant, is this: " No other person can bind the company except the one with whom the business is transacted at the time." This objection, as stated, is not valid. If Dusener was the general agent of the corporation, then his declarations would bind it, whether made at the time the contract was entered into or not. The objection does not present the question as to the nature and scope of the agent's authority, but simply challenges his authority to bind the corporation by declarations not made when the contract was entered into. There may be cases where a foreign corporation may be bound by the declarations and acts of an agent in charge of its business at a town or city, and we can not say that this is not such a case. *Commercial, etc., Co.,* v. *State, ex rel.,* 113 Ind. 331. But, however this may be, the objection as stated simply requires us to decide whether any agent, other than the one who made the contract, can bind the corporation by declarations made subsequent to the contract, and as it is certain some agent may, indeed must, have authority to so bind the corporation—since a corporation acts only by agents—the objection is not well taken.

We must, of course, decide the case upon the uncontradicted evidence adduced by the appellee, since, as we have again and again decided, we are bound to act upon the evi-

dence which the court or jury deemed trustworthy. The question, therefore, is this : Is there evidence directly proving, or from which it may be justly inferred, that the work done at the instance of the appellee was one of reasonable necessity ? If it was simply a work of convenience, the finding can not stand, for matters of convenience can not take a case out of the statute. The evidence of the appellee shows that he was employed, as a stenographer, to report and transcribe the evidence given on the trial of the case of Atkinson *v.* The Great Southern Railway Company, and T. C. Annabel was one of the attorneys in the case. The motion for a new trial was overruled on the 20th day of January, 1883, and sixty days' time given in which to file a bill of exceptions. In the following month the appellee was ordered to prepare a long-hand report of the evidence. This work he completed on the day the telegram was deposited in the appellant's office, which was on the 18th day of March. The appellee says in his testimony that from the time the transcript was ordered until it was completed, " he put in every moment of time he could." Annabel, the attorney, lived at Goodland, and the appellee at Logansport. The judge, by whom the bill of exceptions was to be signed, was holding court at Lafayette. This is the evidence most favorable to the appellee, and our judgment is that it fails to show a reasonable necessity for sending the telegram on Sunday. There is, upon this point, an utter failure of evidence, for the utmost effect that can be assigned the testimony is, that the sending of the message was a matter, not of necessity, but of convenience. For anything that appears, the trains may have been so frequent as to have enabled the appellee to have readily accomplished all he desired by sending his message on Monday.

It does, in fact, appear that the attorney did get the report in time to go to Lafayette and have his bill signed. It does not appear that there was any reason why the message was not sent on Saturday, and the clear inference is that on

that day the appellee knew when the report would be completed. The burden is on the appellee to establish an exception to the general rule prescribed by the statute, and this he can not do by proving facts showing simply a matter of convenience. His proof, at all events, falls far short of establishing a case of necessity. Our conclusion upon this point is fully supported by authority. *Mueller* v. *State,* 76 Ind. 310; *Shaw* v. *Williams,* 87 Ind. 158; *Johnson* v. *Irasburgh,* 47 Vt. 28; *McGrath* v. *Merwin,* 112 Mass. 467; *Connolly* v. *City of Boston,* 117 Mass. 64.

Under the rule laid down in *Mueller* v. *State, supra,* the appellee ought to have done on Saturday what he did on Sunday.

Judgment reversed, with instructions to sustain the appellant's motion for a new trial.

Filed Feb. 12, 1889; petition for a rehearing overruled April 5, 1889.