No. 1,192.

THE WESTERN UNION TELEGRAPH COMPANY v. MOORE.

TELEGRAPH COMPANY.—*Special Delivery Charge, When Prepayment Not a Prerequisite to Duty to Deliver.*—Prepayment of a special delivery charge for a telegram, even when properly chargeable, is not, under all circumstances, a prerequisite to the duty to deliver the message in a city or town, the duty ordinarily attaching when the company receives the message and undertakes its transmission.

SAME.—*Rules and Regulations.— When Binding, When Not.—Conditional Contract of Service.*—Although a telegraph company has the right to establish proper rules and regulations for the transaction of its

business and to insert in its contracts for service proper conditions and stipulations, yet by reason of the *quasi* public character of such corporations and the public duty owing from them, such rules and limitations and conditions must be reasonable, and they will not be permitted to stand if the company thereby seeks to absolve itself from some legal obligation or limit a statutory or common law right.

SAME.—*Rules and Printed Contract Clauses.—How Construed.*—Rules and printed contract clauses prepared by telegraph companies will be construed most strongly against the company.

SAME.—*Special Charge for Delivery Beyond Free Delivery Limits.—Prepayment.—Guaranty.*—Where the contract for service is that for delivery beyond the free delivery limits (which are not specified) "a special charge will be made to cover such delivery;" payment in advance or a satisfactory guaranty is not required, the fair inference being that the amount of the charge is not ascertainable until the service is performed, and is a special charge dependent upon the labor required.

From the Howard Circuit Court.

*J. E. Lamb* and *J. T. Beasley*, for appellant.

*J. C. Blacklidge, C. C. Shirley* and *B. C. Moon*, for appellee.

GAVIN, J.—The appellee sued to recover special damages suffered by reason of appellant's failure to deliver to her with reasonable diligence a message sent to her from Delphi, Indiana, announcing the death of her child.

The appellant answered by the general denial, and also specially setting up a provision in the telegraph blank on which the message was sent, to the effect that messages would "be delivered free within the established free delivery limits of the terminal office. For delivery at a greater distance a special charge will be made to cover the cost of such delivery." It was also averred that appellant had then, and for a long time prior thereto, a general rule in force as follows: "Rule 50. Messages will be delivered free within a radius of one-half mile from the office in any city or town of less than 5,000

inhabitants, and within a radius of one mile from the office in any city or town of 5,000 or more inhabitants. Beyond these limits only the actual cost of the delivery service will be collected. The manager will see, however, that such cost is as reasonable as possible.''

It is also alleged, in connection with many other averments, that appellee resided outside the free delivery limits and nothing was paid or guaranteed for delivery charge.

The cause was tried by the court. After a special finding and conclusions of law thereon, judgment was rendered in appellee's favor. The correctness of the conclusions of law is assailed in this court.

The case hinges upon appellant's duty to deliver the message outside its free delivery limits. From the finding we learn that appellee resided two squares beyond the one mile limit in Kokomo, a city of more than 5,000 inhabitants; that this fact was not known to either the appellant or the sender of the message at the time of its delivery to appellant, who charged and received for its transmission twenty-five cents, the usual charge for service between the two points. The court found the answer true as to the existence of the clause in the blank and rule 50, as set out above, but that the sender had no actual knowledge of either. After receiving the message at Kokomo appellant's agent there learned where appellee lived and sent a service message to Delphi requiring a guaranty of the delivery charges. Of this demand the sender was not notified, although the local agent sought to find him, but did not do so, and did not go or send to his house, where he then was, which was a short distance more than half a mile from the office, that being the free delivery distance there. The message was not delivered until after the funeral of the child, and then

only when called for by appellee, who had accidentally learned it was there.

Section 5513, R. S. 1894, being section 4177, R. S. 1881, reads thus: "Telegraph companies shall be liable for special damages occasioned by failure or negligence of their operators or servants in receiving, copying, transmitting or delivering dispatches. * * *"

The following section 5514 is: "3. Such companies shall deliver all dispatches, by a messenger, to the persons to whom the same are addressed, or to their agents, on payment of any charges due for the same: *Provided*, such persons or agents reside within one mile of the telegraphic station or within the city or town where such station is."

Counsel for the appellee expressly concede that the appellant had the right to increase its charges according to the distance the sendee of the message lived from the receiving station. We, therefore, consider this case upon that theory without stopping to determine its correctness under the statute.

The appellant contends that its duty to deliver the message in question arises from said section 5514, and is contingent upon the actual payment of its extra delivery charge, according to the terms of its rule 50; that without payment there is no duty; that the payment, therefore, must precede the duty to deliver, and since there was no payment there was no default.

It is well understood that men use the more expensive telegraphic service because the urgency of the matter on hand is such that haste is demanded, and the usual course of the mails will not answer the purpose.

Delivery to the person intended is essential to the accomplishment of this purpose. Mere transmission from one station to the other would avail nothing. It has consequently been held that it is as much the duty of

such companies to use diligence in delivering without unreasonable delay, as in transmitting. *Western Union Tel. Co. v. Fenton*, 52 Ind. 1; *Western Union Tel. Co. v. Lindley*, 62 Ind. 371; *Western Union Tel. Co. v. Gougar*, 84 Ind. 176; *Western Union Tel. Co. v. McKibben*, 114 Ind. 511; *Reese v. Western Union Tel. Co.*, 123 Ind. 294.

It is also adjudged that the sendee of the message may maintain an action for special damages on the nondelivery of the message. *Western Union Tel. Co. v. Fenton, supra; Western Union Tel. Co. v. Pendleton*, 95 Ind. 12; *Western Union Tel. Co. v. McKibben, supra; Western Union Tel. Co. v. Cline*, 8 Ind. App. 364.

To sustain its position that there was no duty to deliver without actual payment, appellant cites *Western Union Tel. Co. v. Mossler*, 95 Ind. 29, where it was held that in order to recover the statutory penalty provided for by section 4176, R. S. 1881, actual payment or tender was necessary.

It might be sufficient to say that in this case the recovery of a statutory penalty was sought and a much stricter rule of construction applies where the right to a penalty is asserted than where compensation alone is desired. In the opinion itself the decision is expressly limited to actions for a penalty.

The distinction between suits to recover the penalty and those for damages actually suffered is recognized in *Western Union Tel. Co. v. Meek*, 49 Ind. 53, where, as here, it was contended that there was no liability because there was no payment, "but," the court says, "the complaint and evidence show us that the appellant was a common carrier of messages; and was engaged by the appellee's agent to transmit this particular message. The appellant thereby became entitled to her hire at the usual rates, and the appellee became liable therefor. We think that where the suit is for damages under the stat-

ute, as in this case, and not for the fixed penalty, such a mutual obligation is sufficient to maintain the case. When the appellant undertook to transmit the message, her obligation to perform her duty and her right to receive her hire attached.''

In *Western Union Tel. Co.* v. *Yopst*, 118 Ind. 248, even the penalty was held recoverable without either payment or tender, the tender having been waived.

To what extent, if any, the cases are in conflict as to the recovery of the penalty, we are not called upon to determine.

*Langley* v. *Western Union Tel. Co.*, 88 Ga. 777, is like the Mossler case, which it follows, for the enforcement of the penalty merely.

That the literal compliance with the terms of the statute contended for by appellant is not absolutely essential to a recovery of damages, is also shown by *Reese* v. *Western Union Tel. Co.*, *supra*, where the second paragraph of complaint was held good although there was no payment, there being merely a guaranty, for which there is no provision in the statute.

Our conclusion, therefore, is that prepayment (before transmission) of a special delivery charge, even where properly chargeable, is not, under all circumstances, a prerequisite to the duty to deliver the message in a city or town, the duty ordinarily attaching when the company receives the message and undertakes its transmission.

If a special delivery charge be proper under such circumstances, and we are deciding this case upon that assumption, it may well be that the company would have a right to require its payment in advance by the sender, when the fact of the residence beyond free delivery limits was known to him and he was informed of the amount of the special charge.

A rule, however, which would require such prepay-

ment of the sender, although ignorant that such a charge would be made, or when the amount was undetermined, would, in our opinion, be unreasonable and oppressive in such instances, and should not be enforced.

We are aware that in *Western Union Tel. Co.* v. *Henderson*, 89 Ala. 510, it is declared that the sender is bound to know whether the sendee lives within the free delivery limits, and must himself provide, beforehand, for delivery, if he does not. We do not, however, concur in the reasoning or conclusion of this case upon this proposition. Many men have occasion to communicate with others in cities and towns where they are totally ignorant of the distances between the company's receiving station and the addressee's residence. Even if they know the street and number they may still be wanting in a knowledge of the location with reference to the station.

Such a regulation as we are now considering would, as it seems to us, be harsh, inequitable and unnecessary.

When the patron pays to the company the amount which he believes, in good faith, covers its entire charge for the service, and the company receives it and the message, he has a right to expect that the company will carry the message to the person addressed, if within the statutory delivery limits, and present it to him for delivery. If there be then any additional sum due, the company may require its payment before it surrenders the message to the sendee, if it prefers to so do rather than rely solely upon the sender for its payment. The company will thus be furnished ample protection, and the expectations and purposes of the sender of the message will not be disappointed.

This course seems to us to afford a much fairer and more equitable solution of the problem as to what is the duty of the company than to hold that it may stop the message half way upon its course and thus really render

to the sender no service after receiving from him what both thought to be the full price therefor. We apprehend that if such a course were followed there would be few instances where the sendee would refuse to receive the message and pay the delivery charge, if proper.

If he did, a notification to the sender would, in the most of those few instances, bring the money from him. If, however, the company might occasionally lose a delivery charge, the loss to it would be trifling and inconsiderable when compared with the possible loss and inconvenience to the public and patrons who have relied in good faith upon their delivery of the message.

The company of course had a right to establish proper rules and regulations for the transaction of its business, and to insert in its contracts for service proper conditions and stipulations, yet, by reason of the *quasi* public character of such corporations, and the public duty owing from them, these rules and limitations and conditions must be reasonable, nor will they be permitted to stand if the company thereby seeks to absolve itself from some legal obligation, or limit a common law or statutory right. *Western Union Tel. Co.* v. *Meek, supra*; *Western Union Tel. Co.* v. *Jones*, 95 Ind. 228; *Primrose* v. *Western Union Tel. Co.*, 154 U. S. 1; *True* v. *International Tel. Co.*, 60 Me. 9. Thompson Elec., section 184.

We have gone thus far upon the assumption that counsel for the appellant were correct in construing the free delivery clause in the message blank, and rule 50, which we have already set out, to require payment of the delivery charge by the sender in advance of transmission over the wires.

It has long been settled that in considering insurance policies they shall be construed most strongly against the company, because they are prepared by it after full and careful thought, while the other party has but little

opportunity to weigh the meaning of the words used. *Penn., etc., Ins. Co.* v. *Wiler*, 100 Ind. 92; *Northwestern, etc., Ins. Co.* v. *Hazelett*, 105 Ind. 212.

The same rule is applicable to the construction of the rules and printed contract clauses prepared by telegraph companies, and they are not to be extended against the companies' patrons beyond the letter. *Western Union Tel. Co.* v. *Yopst, supra.*

Counsel insist that under the contract and rule, either payment in advance or a satisfactory guaranty was required.

A careful reading of both the contract and rule fails to disclose any such requirement. So far as we are able to discover, it is not so denominated in the bond. The contract says that for delivery beyond the free delivery limits (which are not specified), "a special charge will be made to cover such delivery."

There is nothing here to indicate that security will be demanded therefor or payment in advance. The fair inference rather is that the amount of the charge is not ascertainable until the service is performed, it being a special charge dependent upon the labor required.

So likewise in the rule, even if we hold the sender chargeable with notice thereof, after stating the free delivery limit it is said: "Beyond these limits only the actual cost of the delivery service will be collected. The manager will see, however, that such cost is as reasonable as possible." Here is nothing about payment in advance or security or deposit or guaranty.

A very natural construction at least (and as it seems to us the one most natural) is that the company would deliver the message as cheaply as possible and then collect the actual expense from the sendee or the sender, the latter being always liable therefor because he had required the rendition of the service.

With these views of the law appellant was entitled to recover upon no theory tenable under the facts.

Judgment affirmed.

Filed Feb. 6, 1895.