WESTERN UNION TELEGRAPH COMPANY *v.* HENLEY.

[No. 2,589. Filed October 5, 1899.]

APPEAL AND ERROR.—*Harmless Error.*—Overruling a demurrer to a bad paragraph of complaint is not reversible error, where it appears from the record that the recovery was upon another paragraph. *pp. 15, 16.*

TELEGRAPH COMPANIES.—*Sunday Messages. — Failure to Transmit. —Damages.—Complaint.*—A complaint in an action to recover damages for failure to transmit a telegraph message which discloses that the contract was made on Sunday must show a reasonable necessity for sending the message on that day, and that the telegraph company had notice of the necessity. *pp. 16, 17.*

SAME.—*Sunday Message.—Necessity.—Notice.*—The reasonable necessity for sending a telegraph message on Sunday, and the notice thereof to the company, may be shown by the contents of the dispatch itself, and if the language of the message be not sufficient for such purposes, the same may be shown by the averment of extrinsic facts in the complaint in an action for damages for failure to send a telegraph message contracted for on Sunday. *pp. 17-20.*

SAME.—*Sunday Message.—Necessity.—Notice.*—A telegraph message which stated that the sender would arrive in the city where the sendee resided at a certain time, does not, on its face, show a reasonable necessity for its transmission on Sunday. *p. 19.*

SAME.—*Sunday Message.—Failure to Transmit.—Complaint.—Necessity.—Notice.*—A complaint against a telegraph company for failure to transmit a message on Sunday, which contains facts indicating a reasonable necessity for delivering it on that day, but which does not show that the company was informed of such facts, is bad on demurrer. *pp. 19, 20.*

SAME.—*Sunday Message.*—Damages cannot be recovered from a telegraph company for its failure to transmit a message on Sunday in violation of law. *p. 20.*

SAME.—*Sunday Message.—Necessity.— Evidence.*— In the trial of an action against a telegraph company for its failure to send a dispatch

on Sunday informing the person to whom it was addressed that her sister would arrive at a certain time, evidence that the company's agent was informed at the time the message was delivered to him for transmission, that the sender was anxious to have the message go at once, as her mother, who lived with the sister to whom the message was directed, was on her death-bed, is sufficient to show a reasonable necessity for sending the message on Sunday. *p. 21.*

TELEGRAPH COMPANIES.—*Failure to Transmit Message.—Damages.— Proximate Cause.*—A telegraph message informing the person to whom it was directed that the sender would arrive in the city where the former lived at a certain time, over a certain railroad, was delivered to the company's agent with the request that it be sent at once, as the sender's mother was on her death-bed at the home of the sender's sister, to whom the message was directed. The company failed to transmit the message, and the sender brought suit for damages and obtained a verdict upon the theory that damages were recoverable for mental distress and nervous prostration suffered by plaintiff by reason of the fact that no person met her when she arrived at the railway station. *Held,* that such a consequence could not have been reasonably anticipated by the parties at the time the contract was made as the result of the breach of it, and that damages cannot be recovered therefor. *pp. 22-26.*

From the Lawrence Circuit Court. *Reversed.*

*Louden & Louden, S. O. Pickens, S. N. Chambers, C. W. Moores, G. H. Fearons* and *R. F. Davidson,* for appellant.

*J. E. Henley* and *J. B. Wilson,* for appellee.

BLACK, J.—The complaint of the appellee, Flora Henley, against the appellant, contained two paragraphs. In the first it was sought to recover the statutory penalty of $100 for failure to transmit a certain telegraphic message with impartiality and in good faith and in the order of time in which it was received. In the second paragraph the appellee demanded special damages for like failure. A demurrer to each paragraph for want of sufficient facts was overruled.

It is suggested by the appellee that it appears from the record that the verdict in favor of the appellee was based upon the second paragraph alone, and that therefore the question as to the sufficiency of the first paragraph of the complaint is immaterial. In the second paragraph as orig-

inally filed the appellee demanded judgment for special damages in the sum of $1,000. This paragraph was amended so as to make demand for judgment in the sum of $1,895 as special damages. In the general verdict the jury found for the plaintiff, and assessed her damages in the sum of $5,000. The jury found specially in answer to one of the interrogatories submitted to them, that the appellee sustained damages in the sum of $5,000 "by reason of no one meeting her at the train when she arrived." Pending a motion for a new trial, the appellee entered a remittitur for all the sum awarded by the verdict except $1,895, the amount demanded as damages in the second paragraph of the complaint, and for this sum the court, after overruling the motion for a new trial, rendered judgment.

We think it sufficiently appears from the whole record that the recovery was upon the second paragraph alone, and therefore we agree with counsel that there could be no reversible error in the overruling of the demurrer to the first paragraph.

In the second paragraph of complaint it was shown that the message was delivered to the appellant's agent at Greencastle Junction, and the contract was made with him for its transmission, on Sunday, the 1st day of September, 1895, and it was sought in the pleading to show that the transmission of the dispatch on that day was a work of necessity. The message set forth in the pleading was as follows: "Greencastle Junction, Ind., Sept. 1st, 1895. To Violet Chollar, 1606 Vermont Ave., N. W., Washington, D. C. Arrive Baltimore and Potomac, Monday, 1:30 p. m. Flora." It was alleged, "that it was necessary that said dispatch should be transmitted on said 1st day of September, 1895, in order to relieve suffering, avert harm, and prevent serious loss of health and life, and that defendant's agent at said Greencastle Junction then and there had knowledge of such necessity."

The appellee in her complaint based upon the contract,

Western Union Tel. Co. *v.* Henley.

having expressly shown it was a contract made on Sunday, for the transmission of a telegraphic dispatch on that day, and having attempted to show that the contract relied upon was not void under the statute by stating matter intended to bring it within the exception expressed in the statute, it was necessary to the sufficiency of the pleading that the validity of the contract be properly shown thereby. The invalidity of the contract was not a matter of defense, but the burden was upon the plaintiff to state facts establishing its validity. *Western Union Tel. Co.* v. *Yopst*, 118 Ind. 248.

In such case it is essential for the avoidance of the statutory inhibition of such a contract made on Sunday, that there existed a reasonable necessity for sending the message on that day and that the telegraph company had notice of that necessity. This reasonable necessity and also the notice thereof to the company may in many cases be sufficiently shown by the contents of the dispatch itself; and if the language of the message be not sufficient for such purposes, the necessity and the notice to the company may be shown by the averment of extrinsic facts. *Western Union Tel. Co.* v. *Yopst, supra.* In that case the court quoted approvingly from *Flagg* v. *Inhabitants, etc.,* 4 Cush. 243, the following language: "By the word 'necessity' in the exception we are not to understand a physical and absolute necessity; but a moral fitness or propriety in the work and labor done, under the circumstances of any particular case, may well be deemed necessity within the statute."

While it is sufficient to constitute the reasonable necessity which will bring the case within the exception expressed in the statute if there be a moral need or propriety under the circumstances of the particular case, yet the fact that it will be conducive to pecuniary profit or business success, or will subserve the convenience of the sender, is not sufficient to constitute such reasonable necessity, and a dispatch whose contents would sufficiently notify the company, on a day

other than Sunday, of the importance of promptness in forwarding and delivering it, and of the character of the damage which might reasonably be apprehended from delay or failure to transmit, might not be sufficient to apprise the company of the reasonable necessity of transmitting the same dispatch if presented on Sunday. If the sending of the message is necessary "in order to relieve suffering, and avert harm and prevent serious loss of health and life", and the company's agent when he receives the dispatch has knowledge of such necessity, either from the contents of the message or from extrinsic facts of which he has information, this will be sufficient to validate the contract.

A Sunday message as follows: "Meet the E. T. train at 3 o'clock," did not show on its face that its subject-matter concerned anything in the nature of charity or necessity. *Willingham* v. *Western Union Tel. Co.*, 91 Ga. 449, 18 S. E. 248.

A message, the object of which was to apprise the sender's mother that a certain friend of the family would be with her to take dinner in company with the sender, was held to be wholly wanting in any character of necessity or charity, and the court expressed the opinion that neither of these characters is to be assumed by mere presumption and without any proof whatever. *Western Union Tel. Co.* v. *Hutcheson*, 91 Ga. 252, 18 S. E. 297.

In *Western Union Tel. Co.* v. *Yopst*, 118 Ind. 248, it was held that a message reading, "Bring forty dollars if you want record," did not show a reasonable necessity for sending the dispatch on Sunday.

In *Rogers* v. *Western Union Tel. Co.*, 78 Ind. 169, 41 Am. Rep. 558, the message for the transmission of which the contract was made on Sunday, was, "Come up in morning; bring all." It was said by the court that upon their face these words implied a friendly invitation to visit the sender, and that such a message could not be regarded as a "work of necessity" within the meaning of our statute.

Western Union Tel. Co. *v.* Henley.

The message set forth in the complaint bore as a signature a feminine Christian name, and by its terms, if transmitted, would inform the sendee, named Violet Chollar, that the sender would arrive at Washington by the Baltimore and Potomac Railway the next day at 1:30 p. m. On its face the message did not disclose the purpose of the journey or indicate the age or condition of the sender or sendee or the relation between them, or whether the sender was traveling alone or with an escort or with others under her care. It did not purport to be a request for any person to meet her or to provide a conveyance for her. It did not show that it was sent in response to any message or suggest the illness of any person, or a desire that the coming of the sender should be communicated to any person besides the sendee. It was a simple announcement of the time of the sender's expected arrival in Washington, and the purpose to be accomplished by sending it, so far as it showed, might have been such that its sending could not be regarded as a necessity within the meaning of the statute. Its sending might be a means of furthering convenience, or promoting a political purpose or a business undertaking, or might be a mere courtesy not specially demanded by any exigency, and which, however proper, might have been as well performed on another day. We think it can not properly be said that a reasonable necessity was shown in the contents of the message. The pleader, possibly taking this view, sought to show by the allegation of extrinsic matter taken in connection with the contents of the dispatch the necessity and notice thereof to the company. In addition to the allegation which we have quoted the pleader further on in the complaint stated some facts which indicated a reasonable necessity, but did not show that the company was informed of such facts. No attempt to show notice to the company was made except in the language above quoted.

It is the office of a pleading under the code procedure to state issuable facts, to show what was done or what was not

done, so that looking to the acts and omissions stated, the court may, by applying the law thereto, determine whether a cause of action or a defense has been shown. It is not proper, omitting the facts, to state their supposed legal force or effect. Plainly it would not be sufficient merely to state that it was necessary to send the dispatch on Sunday, and that the company's agent had knowledge of said necessity. It does not seem to change the character of the pleading simply to state that the transmission was necessary for a named purpose of a general character, such that, if the facts were stated from which the court could determine that a purpose of that character would be promoted, it might properly conclude that there was a reasonable necessity within the meaning of the statute. It is not shown how the agent received knowledge of the necessity. It is not alleged what was said to him and by whom, or that anything was said by any person, or that anything other than the dispatch was shown to him. It does not appear from the facts stated whether or not what took place was sufficient to charge the company with notice of the existence of a necessity.

In *Western Union Tel. Co.* v. *Yopst,* 118 Ind. 248, it was said that to avoid the defense which the statute forbidding the making of contracts on Sunday creates, it was incumbent upon the plaintiff after having alleged that the contract was made on Sunday, "to plead facts showing that there was a reasonable necessity for making the contract on that day, and that the defendant knew of this necessity."

There can not be a breach of legal duty in failure to perform a contract to do a thing prohibited by law, and punishable as a crime. The making of the contract on Sunday was illegal, and the service contracted for would be illegal. The appellee could not base a legal right upon such a contract, and for the failure of the appellant to perform it no damages, not even nominal damages, could be recovered. She was not entitled under her complaint to recover the price paid for the transmission of the dispatch. *Perkins* v. *Jones,* 26 Ind. 499.

It is proper that we should decide another question presented which would arise upon another trial. It appeared in evidence that the appellee was born and reared in the city of Washington, D. C., where at the time of the sending of the dispatch her mother and five sisters resided. She had frequently visited that city within a recent period before this journey. She knew that her mother had been ill for some months. The appellee, or her husband, at Bloomington, Indiana, where they resided, received a dispatch from her sister, Violet Chollar, at Washington, as follows: "Ma is worse. Doctor says come; bring children." The appellee in company with her two children, a girl aged ten years and a boy aged five, started for Washington the next day, which was Sunday. Her husband accompanied her to Greencastle Junction, and there assisted her in changing cars. She cautioned her husband to send a telegram to her sister, Violet Chollar, and after her train had left Greencastle Junction, he delivered to the appellant's agent at that station the dispatch first above quoted, which was never delivered to the person addressed or to any one for her. It does not appear that the appellee saw the dispatch or knew its contents or directed what should be stated therein. Her husband paid fifty cents for the transmission of the message. Being asked, on his examination as a witness, what was said, if anything, between him and the appellant's agent with reference to this telegram, he testified, "I told him that my wife and children were going east, to the bedside of my wife's mother, and I wished he would rush that message." Being further asked what he mentioned with reference to his knowledge of his wife's mother, he answered, "I mentioned that she was on her death-bed." He was next asked, "What did the agent say," and answered, "He said that he would do it." This was all that was shown relating to the information of the agent in addition to the contents of the message. There was enough, we think, to establish a reasonable necessity for sending the message on Sunday.

In seeking to show the damage suffered by the appellee, evidence was introduced to the effect that she was in good health upon the arrival of the train in Washington, between one and two o'clock in the afternoon of Monday, the 2nd of September, 1895; that she alighted from the train and looked all around for her sisters; that she alighted on the platform and walked up to the gate and looked all around for her sisters; that when she got near the gate she began to feel a very sickening sensation, a dizziness and a sense of humiliation; that she then went to the ladies' waiting-room, and that she must have sat down in a seat, that she really felt so dazed and sick and humiliated,—having five sisters living there and not being met,—she sat down in the ladies' waiting-room and sent her little girl for a carriage, but she did not get one; that while in the waiting-room she felt very faint, sick and humiliated and had an anxiety to know how she would reach her destination with her children and baggage, not being able to secure a carriage; that she felt very faint, and was in a very exhausted condition, and her little girl threw some chloral on her mouth or lips. When or where, or by whom, or for what purpose the chloral had been procured does not appear. She further testified, that not being able to go to her sister's house at once and having friends at the American Hotel, which was near by, a block distant, she walked thither and took a room to which she was assisted by the clerk. It appeared that she had been in the habit of stopping at this hotel, and that she stopped there during some portion of this visit after having been at the house of her sister. At the hotel she sent to a drug store and procured some "mustards" and "Bromo-Seltzer." She testified that she had read of "Bromo-Seltzer," and that "mustards was my own remedy." After lying down about two hours at the hotel, she went with her children and luggage to a street car, in which they went to a place about three blocks from her sister's house, to which they then walked. She testified that her children carried the baggage

and she leaned on their shoulders; that she had a fainty spell on the street car and could scarcely walk. When she arrived at her sister's house, the place of residence of her mother, she saw crape on the door. Her mother had died that day some hours before appellee's arrival in the city. Before seeing the crape on the door she had no knowledge of her mother's death. Testifying with reference to the time when she got to the door of the house, she said she remembered reeling, but did not remember anything more, also that she remembered that she leaned against the iron railing on the steps, that she supposed that she was unconscious after she was led into the house. Further testimony was to the effect that she was ill during her stay ot two weeks in Washington and had not recovered at the time of the trial, being subject to spells of nervous prostration. Her physician testified that he believed her disability to be permanent.

The appellee could not recover any damages because of the disappointment, anxiety, or chagrin of any member of her family arising from failure to receive the announcement of her coming through the dispatch sent by her husband, or because of her disappointment or grief at not seeing her mother before her death, which occurred before appellee's arrival in the city. The failure of the appellant to transmit the dispatch could not be regarded as the proximate cause of her grief and prostration occasioned by the information of her mother's death. It appears from the special findings of the jury that all the damages awarded by them were given for injury sustained "by reason of no one meeting her at the train when she arrived."

The only injury shown by which to measure damages, other than nominal, was mental distress and consequent nervous prostration; and counsel have ably discussed the subject of mental anguish as an element of actual damages; but we do not find it necessary to respond in this case by the expression of an opinion on that subject. The case was tried

and the verdict was rendered upon the theory that damages were recoverable for mental distress and nervous prostration suffered by reason of the fact that no person met the appellee when she arrived at the railway station in Washington. Under well settled principles, there was not, we think, such a consequence of the breach of the contract that the injury to the appellee could be the measure of damages, for the reason that such damages can not be fairly and reasonably considered as arising naturally from the breach of the contract itself, or as having been in the contemplation of both parties when they made the contract as the probable result of the breach of it.

In the often mentioned case of *Hadley* v. *Baxendale,* 9 Exch. 341, (S. C. 26 Ency. L. & Eq. 398), the rule was expressed as follows: "Where two parties have made a contract which one of them has broken, the damages which the the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances from such a breach of contract." See *Can-*

*dee* v. *Western Union Tel. Co.*, 34 Wis. 471; *Berkey etc., Co.* v. *Hascall*, 123 Ind. 502, 507; *Lowe* v. *Turpie*, 147 Ind. 652; *Bierhaus* v. *Western Union Tel. Co.*, 8 Ind. App. 246.

The general rule for the ascertainment of the damages to the plaintiff in an action for delay in transmitting his telegraphic dispatch was stated in *Gulf, etc., R. Co.* v. *Loonie*, 82 Tex. 323, 18 S. W. 221, as follows: "They are such as naturally arise from the breach of the contract, or such as may reasonably be supposed to have been in contemplation of both parties at the time they made the contract as to the probable result of the breach of it." See, also, *Western Union Tel. Co.* v. *Short*, 53 Ark. 434, 14 S. W. 649.

In *Primrose* v. *Western Union Tel. Co.*, 154 U. S. 1, 14 Sup. Ct. 1098, it is said, that under any contract to transmit a message by telegraph, as under any other contract, the damages for a breach must be limited to those which may be fairly considered as arising according to the usual course of things from the breach of the very contract in question, or which both parties must reasonably have understood and contemplated, when making the contract, as likely to result from its breach. See, also, *Western Union Tel. Co.* v. *Hall*, 124 U. S. 444, 8 Sup. Ct. 577.

In *Western Union Tel. Co.* v. *Bryant*, 17 Ind. App. 70, it was said, that a message which read, "Cannot come to-day; will come to-morrow," sent by Nancy Bryant to John Bryant, did not apprise the Telegraph Company that a failure to send it would be likely to cause mental distress, or suggest that humiliation or mental distress would reasonably result from the failure of the person to whom it was addressed to be present upon the arrival of the sender at the place of destination.

The contract itself was what was agreed to by the parties and was expressed in the written dispatch. It imported notice of the arrival of the signer of the message at Washington at a specified time. Adding to its contents all that

was said to the appellant's agent, it can not be said that the fact that no person met her at the station, with the injurious effect which it was claimed was caused thereby, was a proximate result within the rule. It might be that the appellee, who does not appear to have known what was in the message, or to have directed what should be written therein, expected to be met by some of her relatives, concerning whom the appellant knew nothing. It does not appear that the person addressed would have met her, but this sister of the appellee was of the opinion when testifying that she would have sent her husband. For the appellee to have been met because of the receipt by the sendee of such a message as was delivered to the appellant's agent, would have involved the independent voluntary action of others taken upon the construction which might be placed upon the message by others, and their disposition and ability, under circumstances of which one of the parties to the contract had no notice. If such an extraordinary effect as the appellee in her testimony described can be regarded as a result of her not being met, which should be compensated in any case, yet her injury can not be reasonably considered as having arisen from the appellant's breach of the contract according to the usual course of things, or as being a probable result reasonably supposed to have been contemplated by both parties when the contract was made. To conclude that the appellee's injury was occasioned by the breach of the contract would be indulging in conjecture.

Judgment reversed, and cause remanded with instruction to sustain the demurrer to the second paragraph of complaint.

Henley, J., absent.