## MOTT v. TELEGRAPH COMPANY.

(Filed November 7, 1906).

*Telegraphs—Prima Facie Case of Negligence—Free Delivery Limits — Extra Charges—Joint Agent—Plaintiff's Son, Messenger.*

1. In an action against a telegraph company for delay in the delivery of a message, an exception to the charge, that it being admitted that the message, charges prepaid, was received at the receiving office at 8:55 A. M., and was not delivered until 11:30, and that the operator then knew that the plaintiff lived a mile away, a *prima facie* case of negligence was made out, nothing else appearing, is unfounded.

2. In an action against a telegraph company for delay in the delivery of a message, the Court did not err in telling the jury that "it was the duty of the defendant, knowing where the plaintiff lived, not to hold the message, but to deliver the same promptly, whether the guarantee charges for delivery beyond the free delivery limits were paid or not, especially if the operator at the sending office had told the sender that no extra charges were required when the message was handed to him."

3. The Court properly charged that giving the message to the plaintiff's son at its office, who came by riding a wheel, with request to deliver to his father, made him the defendant's agent, and it is responsible for the delays of its messenger.

4. Contradictory instructions to the jury are only ground for reversal when the instruction adverse to the appellant is erroneous.

5. An exception to the charge, that if the operator at the sending office told the sender's agent, in reply to his inquiry, that there would be no extra charges, it was negligence to fail to make prompt delivery because such extra charges were not prepaid, is without merit.

6. The Court properly charged that the jury should not take into consideration, as an excuse for delay in the delivery of the telegram, any time consumed by the agent at the receiving office in attending to his duties as railroad agent or in handling the mail.

ACTION by Charles D. Mott against Western Union Telegraph Company, heard by *Judge G. S. Ferguson* and a jury, at the July Term, 1906, of the Superior Court of IREDELL.

On 22 June, 1906, the following message, charges prepaid, was delivered to defendant at Winston, N. C.: "To Charles Mott, Elmwood, N. C.: W. M. Young killed in W. Va. Funeral here, three o'clock. Can you come? Delia Young." The sender was the widow and the sendee a half-brother of the deceased. Hoosier, a witness for plaintiff, testified that he delivered the message to the operator at Winston about 7 A. M., and told him that the sendee lived a mile from Elmwood, and that if there was any extra charge for delivery that he was ready to pay it, and asked if there was any such charge. The operator replied that the 29 cents which he paid was sufficient. This conversation was corroborated by another witness, and the defendant did not contradict it by the testimony of its operator, nor show any cause why it did not produce him. It was in evidence that he was still living, though no longer in defendant's service. The operator at Elmwood testified that he knew the sendee, who lived one mile from Elmwood and a half mile beyond the free delivery limit; that this message was delayed half an hour by a grounded wire, and was received at Elmwood at 8:55 A. M.; that at 9:31 he sent a service message to Winston that 25 cents was needed to secure delivery, and that at 11:11 he received a reply to make the delivery; that in the meantime the plaintiff's son, a boy 15 to 16 years of age, came by riding a wheel, going in the direction of his father's house, and he gave him the message at 10:30 A. M. for immediate delivery. It appeared that the train going to Winston stopped at Elmwood at 9:08 A. M., and that the next train, and the only one after that, which could have gotten the plaintiff to Winston in time for the funeral, did not stop at Elmwood, but stopped at Barber's Junction, 8 miles from the plaintiff's house, who testified that he did not receive the message till 11:30. He testified as to the efforts he made to catch the train at Barber's Junction, and that he failed to do so. The plaintiff's son being dead, his testimony as to the time he

received and when he delivered the message and whether there was any delay, is not obtainable. Defendant appealed from the judgment rendered.

*L. C. Caldwell* and *W. G. Lewis* for the plaintiff.

*F. H. Busbee & Son* and *Armfield & Turner* for the defendant.

Clark, C. J., after stating the case: The defendant's brief relies solely upon exceptions to the Judge's charge. After telling the jury that the plaintiff did not rely upon any delay in the transmission of the message, but only on the delay to deliver after its receipt at Elmwood, that the defendant had a right to restrict its free delivery limits and to charge for delivery beyond, that unless the jury found that the extra compensation was offered and refused when the message was handed in, the receiving office could wire back therefor, and that any reasonable time necessary for this purpose and getting a reply should not be counted by the jury, and that if the agent at Elmwood did what a prudent man should under existing circumstances in entrusting the message to the defendant's son, it was not negligence, further charged the jury as to the evidence of what efforts the plaintiff made after receiving the message to catch the train at Barber's Junction, and that the defendant was not liable if the plaintiff could have done so by reasonable promptness and diligence, and a correct charge as to the assessment of damages for mental suffering—to all which there is no exception—the Court further charged:

1. That it being admitted that the message, charges prepaid, was received at Elmwood at 8:55 A. M., and that the operator then knew that the plaintiff lived a mile away, a *prima facie* case of negligence was made out, nothing else appearing.

2. That it was the duty of the defendant, knowing where the plaintiff lived, not to hold the message, but to deliver the

same promptly whether the guarantee charges for delivery beyond the free delivery limits were paid or not, especially if the operator at Winston had told the sender that no extra charges were required when the message was handed him.

3. That by giving the message to the plaintiff's son for delivery, the defendant made the son its messenger, and any negligence by him in delaying delivery was the negligence of the defendant.

4. That if the operator at Winston told the sender's agent, in reply to his inquiry, that there would be no extra charges, it was negligence to fail to make prompt delivery because such extra charges were not prepaid.

5. That the jury could not take into consideration, as an excuse for delay, any time consumed by the agent at Elmwood in attending to his other duties as railroad agent or in handling the mail.

6. That if, as the defendant's agent testified, delivery could have been made in 15 to 20 minutes, *i. e.,* by 9:15 A. M., but in fact, as the plaintiff testified, the message was not delivered till 11:30 A. M., and the plaintiff immediately made preparations to catch the train at Barber's Station and failed to do so because of the aforesaid delay of the defendant to deliver the telegram, then the defendant is liable.

The exceptions to paragraphs 1, 4 and 6 are unfounded and need no discussion.

Paragraph 5 is justified by what is said in *Kernodle v. Telegraph Co.,* 141 N. C., 438, where *Brown, J.,* well says: "If the defendant employs an agent on joint account with the railroad company, it must abide the consequences of a conflict of duty upon the part of the agent." The contract of the telegraph company is for prompt delivery. It is no defense that its agent had other duties to attend to as agent for another company, any more than it would be an excuse that it had so much business of its own that one agent or the messengers it had could not promptly and properly handle it.

In both cases the defendant is negligent if it does not have sufficient employees to discharge properly the duty it contracts to do and is chartered and paid to do.

As to paragraph 3, the Court properly charged that giving the message to the plaintiff's son at its office, with request to deliver to his father, made him the defendant's agent, and it is responsible for the delays of its messenger. It would be otherwise if the message had been delivered at the plaintiff's house to a person of reasonable age and discretion, the father not being at home, or if the father had sent his son to the telegraph office for a message and it had been delivered to him as his father's agent.

The defendant complains that this charge is contradictory to one given on the same point, as above set out. But contradictory charges are only ground for reversal when the instruction adverse to the appellant is erroneous. If the jury followed the other instruction, which was given at the request of the appellant, it certainly could not complain.

As to the only remaining paragraph of the charge excepted to (number 2 above), the delay to send the service message from 8:55 till 9:31 and the delay of a reply thereto till 11:11 A. M., was left to the jury on the question of negligence; but disregarding that, the Court did not err in telling the jury that "it was. the duty of the defendant, knowing where the plaintiff lived, not to hold the message, but to deliver the same promptly, whether the guarantee charges for delivery beyond the free delivery limits were paid or not, especially if the operator at Winston had told the sender that no extra charges were required when the message was handed him." *Telegraph Co. v. Snodgrass,* 86 Am. St. Rep., 851; *Telegraph Co. v. Moore,* 54 *ibid.,* 515; 12 Ind. App., 136. In this last case, already cited by us with approval, 133 N. C., 606, it is said: "If there be any additional sum due, the company may require its payment before it surrenders the message to the sendee, if it prefers to do so, rather than

rely upon the sender for its payment. The company will thus be furnished ample protection and the expectations and purposes of the sender of the message will not be disappointed. * * * If, however, the company might occasionally lose a delivery charge, the loss of it would be trifling and inconsiderable when compared with the possible loss and inconvenience to the public and patrons who have relied in good faith upon its delivery of the message." *Hendricks v. Telegraph Co.,* 126 N. C., 310; *Bryan v. Telegraph Co.,* 133 N. C., 605. The company need not surrender the message till the sendee pays the extra charges for the special delivery. In *Hendricks' case, Douglas, J.,* says that the clause in the telegraph blanks that for delivery beyond free delivery limits "a special charge will be made to cover the cost of such delivery," by its very terms "does not apply to the office from which the message is sent." It does not say that the message will *not* be delivered beyond such limits, but that "a special charge will be made to cover the cost thereof," which clearly implies that it will be delivered. There may, of course, be cases where by reason of the distance and cost the company should wire back and require the extra cost to be guaranteed by the sender, but such would be unusual, and are not the facts of this case. Here the uncontradicted evidence is that the sending office was told where the sendee lived, and assured the sender that the message would be delivered for the sum charged and paid. The sendee did not refuse to pay the extra 25 cents.

No Error.