# BEDFORD QUARRIES COMPANY *v.* TURNER.

[No. 5,078.    Filed March 7, 1906.    Rehearing denied May 18, 1906.    Transfer denied June 29, 1906.]

1. APPEAL AND ERROR. — *Complaint.* — *Paragraphs.* — *Judgment Resting on Good.*—Where a judgment appealed from affirmatively appears to rest on a good paragraph of a complaint, the overruling of a demurrer to a bad paragraph is not reversible error. p. 557.

2. PLEADING.—*Complaint.—Master and Servant.—Negligence.—Several Acts of.—Proof of One.*—Where the servant alleges several acts of negligence of the master in causing his injuries, proof of one of such acts is sufficient to support a judgment for plaintiff. p. 563.

3. TRIAL.—*Master and Servant.—Negligence.—Proximate Cause. —Interrogatories to Jury.*—An answer to an interrogatory to the jury, stating that plaintiff would not have received the injury complained of but for the defective condition of the derrick, shows such defect to be the proximate cause of the injury. p. 563.

4. MASTER AND SERVANT. — *Safe Place.* — *Promise to Repair.* — Where the master promised to repair the defective cogs in a derrick used in moving heavy stones at a quarry, and the servant, thinking and being assured by the master that such

repairs were made, took his position and because of the non-repair of such cogs, a large stone fell, causing one of plaintiff's feet to be caught and crushed, the master is liable. p. 563.

5. MASTER AND SERVANT. — *Assumption of Risk.* — *Promise to Repair.*—Where the master promised the servant to repair the cogs in a derrick and afterwards assured the servant that such repairs were made, the servant does not assume the risks therefrom, where it is shown that such repairs were not made as promised. p. 565.

From Lawrence Circuit Court; *James B. Wilson,* Judge.

Action by James F. Turner against the Bedford Quarries Company. From a judgment on a verdict for plaintiff for $2,400, defendant appeals. *Affirmed.*

*Brooks & Brooks, F. M. Trissal, E. C. Ritsher* and *W. T. Abbott,* for appellant.

*East & East* and *McHenry Owen,* for appellee.

WILEY, J.—Action by appellee to recover damages resulting to him through the alleged negligence of appellant. His complaint was in two paragraphs, to each of which a demurrer was overruled. Answer in denial, trial by jury, and general verdict for appellee, and with the general verdict the jury found specially by answering interrogatories submitted to it. Appellant's motions for judgment in its favor on the answers to interrogatories and for a new trial were overruled. All of the above specified rulings are assigned as errors.

The sufficiency of the first paragraph of complaint is not questioned in the briefs, but in view of the contention between opposing counsel as to which paragraph of complaint the judgment rests upon, it is important to state the facts relied upon in the first paragraph as to the acts of negligence alleged. It is therein alleged that appellee was in the employ of appellant, and that under such employment it was his duty to run and control a derrick used in lifting stones from one place and carrying them to another; that the derrick was out of repair in this, to wit, that the boxings and bearings in which worked a heavy upright metal rod, on

either side- of which were small wheels, were greatly worn, old, defective, and unfitted for use; and said boxings and bearings would not hold said rod in position, but allowed said rod to become loose, and the play was so great in the boxings that said cogwheels, which worked in other cogwheels on each end of said rod, would not catch, but would permit the cogs to slip out of their places, and thus said derrick would become unmanageable and dangerous to operate when lifting heavy stones; that said cogwheels, by reason of being worn, would not catch on each other and hold, so that said derrick could be safely operated, unless the bearings and boxings were in good and proper condition; that said upright rod and cogwheels were attached to the base of the derrick and mast pole, and were used by operating a wheel connected therewith, called a bull wheel, and which latter wheel controlled the rotary motion of the derrick; that by the turning of the bull wheel the derrick could be turned around to the right or left, or stopped in any desired position, when the derrick was lifting stone or when empty. It is then averred that appellee reported the defective and dangerous condition, etc., of the derrick to appellant's superintendent, and that he promised appellee that, if he would continue to work with the derrick, he would have it repaired and placed in a safe and proper condition; that on the following day appellee again began to work with the derrick and found it defective, and again notified the foreman, and also notified him that unless it was repaired and placed in proper and safe condition he would not continue in defendant's employ; that he was thereafter informed by the appellant's assistant mechanic that said derrick had- been repaired and was safe for use, and he thereupon continued using the same; that on the following day appellee was engaged in giving signals to one Yeskey, a servant of appellant, assigned to the duty of conveying signals to the person in charge of the power controlling the raising and lowering of the boom pole; that a large

stone, weighing many tons, was attached to chains and ropes at the outward end of said boom pole, and was being raised and swung around by said derrick, in a north-westerly direction; that appellee signaled Yeskey for the powerman to stop the power, which signal Yeskey carelessly and negligently failed to convey; that thereupon appellee signaled and ordered the person in charge of the bull wheel to stop the derrick from turning around; that said last signal and order were obeyed, but on account of the worn and defective condition of the cogwheels, and the defective and dangerous condition of the bearings and boxings, and the fact that the upright rod or shaft would not hold its position, the cogwheels of the derrick slipped and would not catch; that the derrick, with a large stone attached, continued to swing rapidly toward appellee, and before he could make his escape he was injured "by the carelessness and negligence of said defendant as above charged, by reason of said large swinging stone striking another stone, causing it to break and separate, and one large, heavy piece of said swinging stone fell, striking the opposite end of another stone upon which this plaintiff's right foot was for the instant resting, in his flight away from said swinging stone and derrick, causing it suddenly to fly upward, catching plaintiff's right foot between it and another stone, thereby crushing said foot," etc. Another act of negligence alleged in this connection was appellant's retaining in its service said Yeskey, who was too young and inexperienced to perform the duties of his position, and who was wholly incompetent and negligent in the performance of his duties, being thirteen years of age, and incapable of realizing the importance of his position, and appellant well knowing of such facts and appellee being ignorant thereof.

In the second paragraph of complaint appellee sets out in full the duties he was called upon to perform by reason of his employment, and describes the manner in which heavy stones are lifted by dogs and chains attached to a

derrick, and removed from one place to another. It is then averred that stones that were sound and free from "dries" were reasonably safe to hitch to and lift; but if such stones being lifted had what were called "dry seams" in them, the lifting of said stones became more hazardous, for the reason that while being swung around the boom they were likely to separate, fall and injure appellee and other employes, and that if the stone had dry seams in it the place around, beneath, and near the stone was dangerous and unsafe in which to work, since the stone was likely to separate and fall upon and injure appellant's servants. It is then alleged that it was the duty of appellant to examine or cause to be examined the stones that were to be lifted, to ascertain whether they were free from "dries" and reasonably safe to lift; that on the day appellee was injured he was in the line of his duty, had the "dogs" placed in a large stone and attempted to lift the same for the purpose of moving it and placing it upon another lot of stones; that properly to place the stone that was being lifted it was appellee's duty to take his position at a point near which such stone would finally be placed, and there ease it down to a convenient resting place, and that while he was so situated, and without any knowledge on his part that the place where he was working was dangerous, and without any knowledge that the stone had a "dry" in it, or was likely to separate in being lifted, the stone when near appellee suddenly separated, and pieces of the same fell against appellee and on his foot, and thereby inflicted the injury of which he complains. It is then charged that appellee "received his injuries by reason of the carelessness and negligence of the defendant in this to wit: that it failed to furnish him a reasonably safe place to work; that it had placed the stone which caused his injuries at a point where he hitched to the same twenty-four hours prior to the time he received his injuries; that at the time it was placed, and at all times afterward until it caused the injuries to

plaintiff, it contained what is known as a "dry" or "fine" seam which separated the stone wholly or partly from the bottom toward the top; that such seam was a fine division of the solid stone in whole or in part, and of such character that in lifting the same in the ordinary and usual manner the stone, while swinging in the air, was likely to separate at such seam, fall and injure or cause to be injured those near by; that defendant well knew that such seam existed in such stone, or with a reasonably close inspection could have known it long enough before plaintiff's injuries to prevent the same; that by a proper and reasonable inspection, although not visible to casual observation, the "dry" could have been discovered and plaintiff's injuries prevented. Plaintiff further alleges that defendant well knew that the lifting of said stones by means of dog and boom pole, heretofore described, would be dangerous to defendant's employes, and especially to this plaintiff; that appellant further knew, or by reasonable diligence could have known, that said stone while being lifted in the air would probably separate, fall and injure the plaintiff or other employes, and with all such knowledge it further negligently failed to notify the plaintiff of the defective condition of such stone, or that there was a "dry" seam in the same, or that it was likely to fall and injure him, or that the place in which he was working at the time was dangerous and unsafe; that said defendant well knew that said place was unsafe and dangerous, and plaintiff further alleges that he was ignorant of all such facts and received his injuries while he was in the line of his duty, etc.

As to the first paragraph of complaint appellant has not pointed out any objection.

Counsel for appellee contend that it affirmatively appears from the answers to interrogatories that the verdict and judgment rest upon the first paragraph of complaint, while counsel for appellant affirm that they rest upon the second; also that as

the second paragraph is bad, the judgment cannot be upheld. If in fact the second paragraph is bad, and it affirmatively appears that the verdict and judgment rest upon it, a reversal will have to be ordered, for a bad paragraph of complaint will not support a judgment. If, on the other hand, it affirmatively appears that the judgment rests upon the first paragraph, even if the second is bad, the overruling of the demurrer to it was not reversible error. *Western Union Tel. Co.* v. *Henley* (1899), 23 Ind. App. 14; *Town of Rochester* v. *Bowers* (1899), 23 Ind. App. 291; *Lowry* v. *Downey* (1898), 150 Ind. 364; Elliott, App. Proc., §666. We will, therefore, first determine this question, and if it is determinable from the record, we must look to the interrogatories and answers for its solution.

The following facts, pertinent to the matter under consideration, are exhibited by the answers to interrogatories: The steam-power had nothing to do with turning the derrick, but was simply used to raise and lower the stone swung from the boom. Appellee was the derrick runner, and in charge of it and the men operating it. It was his duty to direct what stones to lift and move, as to how they were hooked, how high they were to be raised, and how far moved, and when to be let down. He was not responsible for the management of the derrick in handling stones. At the time of the accident the boxings and bearings on the upright rod on the shaft were worn, old, defective and unsuited for use, so that they would not hold the rod in perpendicular, but allowed it to become loose, so that the cogwheels on it would not catch, but would slip and get out of their places. The cogwheels were old and defective, and would not catch on each other. The derrick was turned solely by the efforts of the man on the platform operating the propeller, and could have been stopped solely by him if the derrick had been in order. The stone which was being moved, and which broke and injured appellee, did

not strike any other stone or object until it had broken and fallen. It broke because of the "dry" or defect in it, and the breaking of the stone caused it to fall and inflict the injuries upon appellee. The entire operation of moving the stone, including the hooking of the dogs into it, was under the sole management and direction of the appellee. He was an experienced derrick runner and familiar with the duties of operating and managing a derrick. When the stone had been lifted, if appellee's signal had been transmitted by Yeskey to the power man he could not have stopped the derrick from turning. Appellee did not know of the defects in the derrick. He did not know the cogs would not mash, having been informed that the defects had been repaired. The boxings, after appellee complained that they were out of repair, had been repaired "temporarily," but such repairs were not sufficient. The boxings and bearings were not in good order, and the cogs on the small wheel and master wheel would not catch on each other. The stone was being moved at an unusual rate of speed, because the cogs were not mashing. The stone was raised to its entire height before the derrick and stone began to swing. Before appellee caused the stone to be lifted he looked at it to see if it was all right. It was the duty of the appellee to look out for the safety of himself and the other members of the derrick crew. It was not his duty to know that the stone was in proper condition or safe to lift. He gave the order or signal to lift the stone. When appellee was hooking the stone before it was lifted, he was close enough to see the "dry," if he had looked. He had daily been working as a derrick runner, and had been lifting and moving with the derrick stones with "dries" in them. When the stone was lifted and moved no one was present, other than appellee, to give orders and directions in regard thereto. It was his duty, if he saw anything wrong with the stone, not to lift it until he had notified the ledge foreman. The "dry" in the stone was not visible to

a person within two or three feet of it, and it did not show through the stone on bottom, top or sides. The stone broke at a "dry." When the stone was dragged appellee stood within a few feet of it and gave the signals and directions when the power was to pull and when not to pull, and such directions were given of his own volition and not by the orders of any one else. Before the stone was lifted appellee put one hook in the hole in one end and went to the other end. He was on the stone when he put the hook in one end, and walked on it to look at the other end. The stone had been dragged from the ledge about seventy-five feet to a place from which it was lifted on the day before by the derrick controlled by appellee. When he was hooking and preparing the stone for lifting he could have seen the "dry," if such "dry" had been visible. The jury found that the reason why appellee could not and did not see the "dry" was because it was not visible. The inspector, whose duty it was to inspect the stone, did not discover the "dry," nor did any one discover it before the accident. The inspector made the inspection in the usual and customary manner of making such inspections under like circumstances. The stone which was being lifted did not strike any other stone just at or before it fell. The stone contained a dry seam which made a division in the stone that was not discoverable by a casual observation. It would have required a close examination or inspection of the stone to ascertain the nature and extent of the dry seam.

Columbus Prow was in appellant's employ, and under such employment it was his duty to make inspection of stones to ascertain if they were safe to lift with a derrick. Appellee was under his direction, and bound to obey his orders. Prow inspected the stone that broke, and directed appellee to move it with the derrick, and he had full charge of appellee and the derrick crew at the time of the accident. The only authority that appellee had as derrick runner was to give signals for the operation of machinery when a stone

was being lifted.  Prow directed all the work done by appellee and the derrick crew, and pointed out to them the places to set the stones and what stones to lift.  Appellee did not know that the stone he was lifting had a dry seam.  The fact that the stone had a dry seam, by reason of which it was liable to separate and fall, made the place where appellee was working dangerous and unsafe.  His working place was also rendered dangerous by reason of the fact that the derrick was unmanageable, and the rotary motion could not be stopped by the bull wheel, on account of its being out of repair, so that the cogs would not catch in the master wheel.

The following interrogatories and the answers thereto, which relate particularly to the question we are now considering, we give in full: "No. 83.  Would not the plaintiff's injuries have been prevented, if the derrick had not been defective and out of repair, by James Mundy, the bull wheelman stopping the rotary motion of said derrick before the swinging stone reached the stack where plaintiff was working? A. Yes." "No. 95.  Immediately on discovering that the boxing and cogs had become defective, did not the plaintiff, by signal, notify James Mundy to stop the boom from turning further, and did he not in a few seconds thereafter notify Yeskey to stop the power? A. Yes.  No. 96.  On signal from the plaintiff did not James Mundy immediately attempt to stop the movement of the boom from turning, and failed because of the defective condition of the cogs and boxing? A. Yes.  No. 97.  Did not the boom pole, because of the defective condition of the boxing and slipping of the cogs, go round westward and northward, gaining speed as it went, until the stone broke near where the plaintiff was standing; there breaking and dropping on another stone which tilted the north end upward, catching plaintiff's right foot and crushing it off? A. Yes.  No. 98.  Was not the defective condition of the cogs and boxing one of the direct causes of plaintiff's in-

jury? A. Yes. No. 99. If the cogs and boxings had been in proper and safe condition, would not James Mundy have been able to stop the boom before it reached the point where the stone separated' and where plaintiff was standing? A. Yes."

Prior to the day of the accident appellee notified appellant's ledge foreman, Prow, that the boom pole of the derrick would not work because of defects in the boxings, and appellant, through its foreman, promised appellee if he would remain in its employ the defects would be repaired the next morning. This was on June 19, 1901, and the following morning some repairs were made on said boxing, and the assistant master mechanic, who made the repairs, stated that the defects were repaired all right, and told him to go ahead and work. Appellee relied on this statement, continued in appellant's employ, and until the time of his injury believed that the machinery was safe to work said boom. The jury also found that the boxing in which the staff turned again became defective when the boom was 'lifting the stone which injured appellee. The jury also found that appellee discovered that the stone was coming rapidly toward him, and that he quickly used all reasonable effort to avoid injury by running from it.

The effort made to repair the defects in the machinery was ineffective because the boxing still remained loose, and the cogs slipped at the time of plaintiff's injury. The jury also found that Yeskey was employed as a signal boy, had been there two or three days, but that appellant failed fully to instruct him as to his duties. He was only thirteen years old. He was inexperienced and incapable of acting as signal boy. Appellant knew these facts. At the time of the injury Yeskey had his face turned from the derrick runner, and he failed to convey the signal given to the power men. If Yeskey had conveyed the first signal the boom could have been stopped in lifting the stone to a point below the top of the pile on which it broke. One of

the causes that produced appellee's injury was Yeskey's failure so to convey such signal.

We have given all of the material facts specially found, so that we may determine whether they affirmatively show that the judgment rests upon the first paragraph of the complaint, and also whether appellant was entitled to judgment on the answers to interrogatories notwithstanding the general verdict.

It may be observed that several acts of negligence are alleged in the first paragraph, but we are inclined to the belief that appellee seeks to hold appellant responsible

2. because of defective machinery and the employment of an inexperienced and inefficient signal boy. It is true that it is averred that the stone that was being lifted had a dry seam in it; that it struck another stone, by which it was broken, resulting in the injury. It is asserted by counsel for appellant that as the jury found that the stone did not strike another stone before it broke, we are driven to the conclusion that it affirmatively appears that the judgment is based upon the second paragraph of the complaint. This does not necessarily nor logically follow. If the other acts of negligence were the moving and proximate causes of the injury, we may disregard the allegation of the complaint that the stone broke by striking another stone on account of there being a dry seam in it.

The jury specifically find that appellee would not have received his injury if it had not been for the defective condition of the derrick. If this be true, and we must

3. assume it as an established fact, such defective condition was the direct cause of the injury.

It is also further found that if Yeskey had properly conveyed the first signal given the boom would have been stopped below the top of the pile on which the stone

4. broke. It is further shown that two days prior to the accident appellee discovered the defects in the machinery, reported them to the proper authority, was as-

sured that repairs would be made if he would remain in appellant's service; and he relied upon such promises, and afterward was informed that such repairs had been made. It is found also that such repairs were insufficient, because they left the boxings and bearings in bad order; that the cogs would not mash, and that when appellee discovered his danger and gave the signal to stop the derrick boom it could have been stopped if the machinery had been in proper repair.

The facts exhibited by the answers to interrogatories establish every act of negligence alleged in the first paragraph, except that the cause of the breaking of the stone that was being lifted, was the fact that it struck another stone before it did break. The fact, however, that it did break is made manifest, and the fact that it broke without striking another stone first is not of material importance. All of these facts, considered together, clearly show that the verdict and judgment are based upon the first paragraph. Appellee was placed in a perilous position without any fault on his part. He appreciated the danger and made every reasonable attempt to avert its consequences. He was imperiled by reason of the fact that the machinery with which he was working was so defective that it could not be controlled, and he was lulled into a place of danger by an assurance on the part of appellant, through its authorized servant, that such machinery had been repaired and made safe.

Having reached the conclusion that the verdict and judgment are grounded on the first paragraph, it is unnecessary for us to determine the sufficiency of the second paragraph; for, if it is not sufficient, the overruling of the demurrer is not a reversible error.

The facts specially found support the general verdict as to all material matters, and hence appellant's motion for judgment on the answers to interrogatories was properly overruled.

Western Union Tel. Co. v. Sefrit—38 Ind. App. 565.

An examination of the evidence convinces us that it is ample to support the verdict and judgment.

The remaining question which counsel have discussed relates to the assumption of risk on the part of appellee.

5. Under the evidence and facts in this case, without entering into a detailed discussion, we are clear that the doctrine of the assumption of risk on the part of an employe, which absolves a master from liability in case of injury, is not applicable here.

The judgment is affirmed.