ANNA CASHION v. WESTERN UNION TELEGRAPH COMPANY.

(Decided April 11, 1899).

*Damages—Telegram—Mental Anguish.*

1. It is not necessary to disclose the relation of the parties in the message in order to recover damages for mental anguish, presumed or proved, in consequence of negligence in its delivery.
2. The failure to promptly deliver a telegram is not only a breach of contract, but also a failure to perform a duty which rests upon the telegraph company as a servant of the people.

CIVIL ACTION for damages as compensation for mental anguish occasioned by negligence of defendant in delivering a telegram sent at plaintiff's instance to her brother-in-law, J. W. Mock, tried before *Shaw, J.,* at February Term, 1899, of the Superior Court of IREDELL County.

This is the same cause reported in 123 N. C., 267, and tried upon the same two issues as to negligence and damages.

Copy of telegram:

"MORGANTON, N. C., August 17, 1897.

"J. W. Mock, Davidson:

"Come at once; Mr. Cashion is dead; killed while at work.

"JOHN PAYNE."

The following is the evidence material to the case:

Mrs. Cashion testified as follows:

"On the 17th day of August, 1897, I was living in Morganton, N. C., with my husband and infant child. About 3 or 4 o'clock p. m., of that day my husband was killed at work. I asked Mr. Payne to send a message for me to my

brother-in-law, J. W. Mock, at Davidson, N. C. Mock lived with us at Morganton; was on a visit to his father at Davidson. The message was sent for my use and benefit. I left Morganton on the morning of the 18th of August, about 5 o'clock; came to Statesville with the body of my husband, which remained in the depot at Statesville all day. I received no reply to the message, or any communication from Mr. Mock. I expected him on the 11 p. m. train of August 17th, 1897; was disappointed by his not coming; was greatly troubled, as I knew he could help me where no one else could. His failure to come to Morganton occasioned me additional suffering to that already caused by the death of my husband. I felt that I was forsaken. He was near to me and lived with us and I knew he could help me more than strangers, besides we were good friends."

On cross-examination, witness testified:

"I sent the message to Mock because he lived with us; I knew he would come to me, and he knew where to go when he came. His consolation and comfort, because of his being a part of our family, would be more natural than that of my brothers living at a distance. His failure to get to Morganton added to my sorrow and anguish. He was just like a member of the family; had been there and knew all about the place. I did not know why he did not come or what was the matter. I did not feel that he had gotten the message and refused to come."

J. W. Mock testified:

"I am a brother-in-law to Mrs. Cashion; lived in her house at Morganton, same as where she lived. On August 17th, '97, I was at Davidson; received no message on that day. When I saw Mrs. Cashion on August 18th at Statesville she seemed to be in a great deal of trouble and asked me why I did not come to her at Morganton; wanted to know the

reason I had not answered the message or written to her; seemed to be in a great deal of pain because she had not heard from me any way at all."

J. N. Payne testified for the defendant:

"At Mrs. Cashion's request, I went to the telegraph office in Morganton on August 17th, 1897, and sent a message, a copy of which is above set forth. Mrs. Cashion paid for the message. I told the operator nothing about the message, or the relationship between Mrs. Cashion and Mr. Mock, that I remember of. I asked the operator to send it off at once. The operator did not ask me any questions about where to send the message, or anything about Mrs. Cashion, or Mr. Mock. The operator at Morganton was a new man, the regular operator being absent at that time."

Among other things, his Honor charged the jury: If you should answer the first issue, "Yes;" that the defendant company was guilty of negligence, your answer as to the second issue can, under no circumstances, be more than twenty-five cents (the cost of the telegram)—his Honor assigning as the reason, that there was no evidence that the defendant company had any notice that the telegram was sent for the benefit of the plaintiff, or that it had any notice of the relationship existing between the plaintiff and said J. W. Mock.

Plaintiff excepted. The verdict was in favor of plaintiff for twenty-five cents and judgment accordingly. Plaintiff appealed.

*Messrs. L. C. Caldwell* and *J. F. Gamble,* for plaintiff (appellant).

*Messrs. Jones & Tillett,* for defendant.

DOUGLAS, *J.*. . This case was here before, and is reported in 123 N. C. 269. It is now before us on an exception to the

charge of the Court below, which is stated in the record as follows:

"The following is the charge of the Court pertinent to the determination of the contention of the parties: The plaintiff contends that by reason of the delay in the delivery of this telegram, her brother-in-law was prevented from being present with her, and that by reason of the absence of her brother-in-law upon this occasion she suffered mental anguish; that she suffered more than she would have suffered under the circumstances, on account of the death of her husband. Now to determine this question the Court charges you that there is no presumption of law that plaintiff suffered mental anguish on account of the absence of J. W. Mock; that the fact that she stood in relation to him as a sister-in-law, and the further fact of his being prevented from being with her would not have raised the presumption that she suffered mental anguish on account of his not being there, but the burden is on the plaintiff to show by the preponderance of the evidence that there was existing between plaintiff and J. W. Mock such tender ties of love and affection as that his presence, advice and sympathy with her in Morganton and on the journey to Statesville would have given her comfort and consolation in her distress and would have prevented her from suffering to the extent she says that she actually suffered. But if you should find that such a relation existed between plaintiff and J. W. Mock, yet as the plaintiff admits that she did not sign the telegram, and that her name is not mentioned in the telegram, and that Payne signed and sent the same as the agent of the plaintiff, before she can recover damages for mental anguish occasioned by the failure of J. W. Mock to be present with her upon this occasion, the burden is upon the plaintiff to show by a preponderance of the evidence that

at the time the message was delivered to the defendant company the said company was notified of the fact that the telegram was sent for the benefit of the plaintiff, and also of the relations existing between her and J. W. Mock. And the Court charges you that there is no evidence that the defendant telegraph company had any notice that the telegram was sent for the benefit of the plaintiff or that it had any notice of the relationship existing between the plaintiff and the said J. W. Mock, and your answer to the second issue can not be more than twenty-five cents—the cost of the telegram. The plaintiff does not contend that there was any physical injury to herself resulting from the alleged negligence, but the allegation in the complaint is for mental anguish suffered by her, and as the plaintiff has failed to show that the defendant company had notice that the telegram was sent for her benefit, or had notice of the relationship existing between her and J. W. Mock, she can not recover in this action except the twenty-five cents paid for the telegram. If you should answer the first issue 'yes,' that the defendant company was guilty of negligence, your answer as to the second issue can, under no circumstances, be more than twenty-five cents."

There was a verdict, and the following is the judgment of the Court:

"This cause coming on to be heard at this term of the Court before *Shaw, J.*, and a jury, and being heard upon the whole record and the following issues submitted:

"1st. Was the defendant guilty of negligence as alleged in the complaint? to which the jury answered 'yes'; and 2nd, 'What damage has plaintiff sustained by reason of the negligence of the defendant?' to which issue the Court ordered the jury to respond, '25 cents,' the amount paid for the transmission of the message. It is therefore adjudged that the plaintiff recover of the defendant the sum of 25 cents, and the costs of the action." The plaintiff appealed.

This directly presents the question whether the plaintiff can recover damages for mental anguish, caused by the negligence of the defendant in failing to promptly deliver a telegram sent through an agent, when the name of the plaintiff was not signed to the telegram, and when the fact that it was sent for her was not disclosed to the defendant at the time the message was sent, nor were her relations with the addressee then communicated to the company.

We intended to decide this question at the first hearing and thought we had done so, at least by direct inference, but it seems not explicitly enough to be understood. To prevent any further misconstruction we say plainly she can recover, if otherwise entitled.   In other words, the failure to give such information was no bar to the action or to the recovery of substantial damage. In *Lyne v. Telegraph Company,* 123 N. C.,129,it was held that where a telegram relates to sickness or death, it is not necessary to disclose to the company the relation of the parties, as there is a common sense suggestion that it is important.   The same rule applies here.   The telegram in question stated that Mr. Cashion had been killed while at work, and on its face suggested that it was of unusual importance to somebody.   The defendant knew that somewhere there was a vacant chair, that some one the lonely death watch was keeping.   Who or where, it mattered not to the defendant, as it had no more right to wrong one person than another.

The able counsel for the defendant relies upon *Hadley v. Baxendale,* 9 Exc: 341, quoting as follows: "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive, in respect of such breach of contract, should be such as may fairly and reasonably  be considered, either  arising  naturally, *i. e.,* according to the usual course of things from such breach of

contract itself, or such as may be reasonably supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiff to the defendant and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow a breach of contract under these special circumstances as known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances from such a breach of contract.

This rule is almost universally followed as to all ordinary business transactions, but can it have any possible application to the case at bar? We think not. What probable damages could Mrs. Cashion possibly have had in contemplation, when, in the first hour of her bereavement, she sent a telegram announcing the sudden and violent death of her husband? Surely she could not be expected to dictate such a telegram with the cool deliberation with which a man would contract for the shipment of a mill-shaft; nor can her mental anguish be measured by the rule laid down in determining the lost profits of Hadley's mill. We must admit that damages for mental anguish are somewhat anomalous, and the extreme difficulty of their admeasurement by any ordinary rule of law has led many jurisdictions to reject the doctrine.. We have found it established in this State and feel compelled to uphold it on the highest principles of public policy and.

124—30

of private right, and must give it such a reasonable construction as will enforce its legitimate results.

One other principle must be kept in view: A telegraph company is in the nature of a common carrier. Claiming and exercising the right of condemnation, which can be done only for a public purpose, it is thereby affected with a public use. It owes certain duties to the public which are not dependent upon a personal contract, but which are imposed by operation of law. A simple contract is an agreement between two parties, a drawing together of two minds to a common intent, and must be voluntary as well as mutual. Whenever a man, at a proper time and place, presents a telegram to the company for transmittal, and at the same time tenders the proper fee, the company is bound to receive, transmit and deliver it with reasonable care and diligence. It can not refuse to receive it, and while it may protect itself by reasonable regulations, it cannot insist upon a personal contract contrary to its usual custom or to public policy. As was said in *Reese v. Telegraph Company,* 123 Ind., 294, the failure of the telegraph company to promptly deliver a telegram "is not a mere breach of contract, but a failure to perform a duty which rests upon it as the servant of the people." While reaffirming the doctrine, we must again earnestly caution juries against its abuse. The defendant is in no way responsible for the anguish suffered by the plaintiff for the loss of her husband. All that can possibly be charged to it is the injury resulting from a negligent failure to deliver the telegram, and the jury in considering this matter should carefully guard against the sympathy they would naturally feel for the widow and orphan child. However creditable to them as men, it must be ignored by them as jurors. If the defendant has been negligent, it is their duty to give to the plaintiff a fair recompense for the anguish she has suffered

from such negligence, but from that alone; and in determining the amount, they should render to each party exact and equal justice without the shadow of generosity, which is not a virtue when dealing with the property of others.

The counsel for defendant argued before us other questions not presented by the record, which we cannot properly consider. For error in the charge of the court a new trial must be ordered.

New trial.