JAMES BEATTIE ET AL. v. D. H. HARDY, SECRETARY OF STATE.

No. 815. Decided November 20, 1899.

**Corporation—Charter—Business Beyond State.**

   A corporation may be created under the general laws of Texas, authorized to do business therein, though authority is also conferred by its charter to hold property and transact business beyond the limits of the State. (Pp. 135-137.)

ORIGINAL APPLICATION for mandamus to compel the Secretary of State to file the charter of a proposed corporation.

*Davis & Garnett,* for petitioners.—The persons who have signed and executed the charter in question have the requisite citizenship, as pre-scribed by article 644 of the Revised Statutes. The purposes enumer-ated are such as are authorized by subdivisions 24 and 28 of article 642 of the Revised Statutes. The charter contains all the requirements of article 643 of the Revised Statutes. Article 673 of the Revised Statutes requires the corporation to keep its principal office within Texas, and, with this limitation, it seems authorized to transact its business wherever the interest of the association may be best promoted.

   The Secretary of State seems to think that, as subdivisions 38 and 39 of article 642 authorize the formation of corporations for the purpose of

owning and selling land outside the State and for navigating the high seas, the idea is negatived that a private corporation, formed under the laws of Texas, can transact any other kind of business outside the State. These are recent additions to the article and can not be considered as showing any legislative intent in reference to its original provisions; but, upon examination of subdivision 39, it will be seen that it does not bear the construction claimed by the Secretary of State. It certainly does not manifest any intent in the minds of the Legislature not to grant charters authorizing the transaction of business outside of the State, but does not show that in that particular instance charters are authorized conferring authority to buy, own, sell, and convey real estate in any State or foreign country. Subdivision 39 was not placed in its present shape to restrict the rights of land or any other class of corporations outside of Texas, but to limit and restrict the rights of land corporations to acquire land in Texas, recognizing that land corporations formed under the laws of Texas could have such rights in other countries as should be conceded to them by statute or comity of such other countries. Subdivision 38, and the businesses therein provided for, furnish an apt illustration of the rule that corporations formed in one jurisdiction can do business anywhere on the globe, unless restricted by the laws of the jurisdiction where they propose to do business. Neither Texas nor any other State of the Union has jurisdiction of the high seas; yet a corporation formed under the laws of any State of the Union, even though such State does not touch any navigable stream or waters, can buy and own ships and navigate the ocean anywhere under the sun.

If the Texas Legislature had intended that no corporation should be formed under the Statute with authority to do business outside of the State, it does seem that they would have expressly so said, and would not have left it to the Secretary of State to arrive at that conclusion from any far-fetched construction of its provisions. It violates no rule of policy in Texas for its corporations to branch out and compete for the business of the world. The corporation law of Texas is similar to that of other States, and there is nothing in our law requiring our corporations to remain at home, any more than there is in the laws of any other State or country. It is true that the present corporation, for its right to do business in the Indian Territory must depend upon the laws or comity in force there. The charter is the contract between the incorporators. The purpose of the corporation, and the place where its business is to be transacted, are specified with the object of restraining the trustees or the majority of the stockholders from embarking in enterprises not contemplated by the original incorporators. They are inserted for the protection of the stockholders. Whether the laws or comity of the Indian Territory will or will not permit the corporation to own and operate a mill and elevator at Ardmore, is a question that ought not to concern the Secretary of State, for it is not his business. The incorporators assume the risk. We will say, however, that the Indian Territory is a territory of the United States, and the United States has

always respected in its territories charters granted by the various States of the Union. Cowell v. Springs Company, 100 U. S., 55; Christian Union v. Yount, 101 U. S., 352; Runyon v. Coster, 14 Pet., 128; Bank of Augusta v. Earle, 13 Pet., 584.

*T. S. Smith,* Attorney-General, and *R. H. Ward,* Assistant, for respondent.—The first special exception of respondent presents the question that title 21 of the Revised Statutes, regulating the formation of private corporations, only permits the creation of corporations for the purpose of transacting business in the State of Texas,—that the law upon its face as well as the spirit of the law contemplate that the corporation shall be a Texas corporation, with its legal residence or domicile here, created for the purpose of transacting business here. This law in no manner authorizes the corporation to be formed for the purpose of doing business elsewhere. The corporation law was amended in 1897. See Acts of 1897, p. 188, subdivisions 38 and 39.

These are the only two provisions of the law that in any manner confer authority for the creation of corporations with power to exercise their franchises beyond the limits of the State. And in subdivision 38 it is expressly provided that corporations created thereunder shall only exercise such power and franchises beyond the jurisdiction of this State as may be granted to or conferred upon them by any foreign government, State, or municipality.

These being the only instances, and the charter under consideration not coming within the terms of either, where the law attempts to authorize the creation of corporations with extraterritorial powers or franchises, it must necessarily follow that it was not the legislative intention to create any other corporations with such powers. If express power was deemed necessary by the Legislature as to corporations created under said subdivisions 38 and 39, why is not such express power necessary as to the charter under consideration? Certainly there is no such express power in the law. We think the Secretary of State was justified in refusing to file the charter for these reasons.

We think it equally well settled that the laws of a State can have no binding force, proprio vigore, outside of the territorial limits and jurisdiction of the State enacting them, and any attempted creation of a corporation for the express purpose of doing business in another jurisdiction is absolutely null and void.

Corporations formed in one State ordinarily transact business in other States, but such right only exists by the comity of the other State. The power is derived from the comity of the other State, and can not be attributed to any right or power conferred by the State creating the corporation. In the case of the Franco-Texan Land Company v. Laigle, 59 Texas, 343, our Supreme Court say: "A private corporation, whose charter has been granted by one State, can not hold meetings or pass votes, or have any legal existence in another State. It must dwell in the place of its creation, and can not migrate to another sovereignty."

Bank of Augusta v. Earle, 13 Pet., 519; Miller v. Ewer, 27 Me., 509; Aspinwell v. Railway, 20 Ind., 497.

It is, to say the least, doubtful whether or not a State could grant a corporation the right to change its residence to another sovereignty at its own will, and there exist and perform its corporate functions. The case of Empire Mills v. Alston Grocery Co., 15 Southwestern Reporter, 505, is directly in point. That case was decided by the Court of Appeals when it had civil jurisdiction. In that case it was held that a charter taken out in Iowa under the laws of that State, for the purpose of transacting a mercantile business in Dallas, Texas, was absolutely null and void. In reaching that conclusion the court made an exhaustive examination of all the authorities bearing on the subject. In the case of Land Grant Railway v. Commissioners, 6 Kansas, 253, the Supreme Court of that State held that one State could not create a corporation for the purpose of transacting business in another State. To the same effect are the following cases: Montgomery v. Forbes, 148 Mass., 249; Saltmarsh v. Spaulding, 147 Mass., 224; Hill v. Beach, 12 N. J. Eq., 31; Booth v. Wonderly, 36 N. J. L., 250; 6 Thomp. Com. on Law of Corp., secs. 7895, 7896.

BROWN, Associate Justice.—The plaintiffs, James Beattie, A. F. Jones, J. C. Whaley, and L. H. Griffin, presented to the defendant, D. H. Hardy, Secretary of State of the State of Texas, the following charter for record in his office:

"*The State of Texas, County of Cooke.*—Know all men, that we, A. F. Jones, James Beattie, J. C. Whaley, and L. H. Griffin, citizens of the State of Texas, residing in the county of Cooke, do hereby unite and associate for the purpose of forming a corporation under the laws of Texas, the name of which shall be The Ardmore Mill and Elevator Company, and shall exist for the period of fifty years. Said corporation is, formed for the purpose of owning, maintaining, and operating a flouring mill, grain elevator, and cotton gins in the town of Ardmore, Chickasaw Nation, Indian Territory, and for the purpose of buying and selling, and dealing in grain. The business of said corporation shall be transacted at Gainesville, Cooke County, Texas, and at Ardmore, in said Chickasaw Nation. Said corporation shall have five directors, and such directors appointed for the first year are J. O. A. Whaley, James Beattie, J. C. Whaley, L. H. Griffin, and J. M. Floyd; all of whom are residents of Cooke County, Texas, except the said Floyd, who resides in said town of Ardmore. The capital stock of said corporation shall be fifty thousand dollars ($50,000), divided into five hundred shares of one hundred dollars each."

The charter was acknowledged, as required by the laws of this State, and the plaintiffs made proof that 50 per cent of the authorized capital had been subscribed and that 10 per cent had been actually paid in.

The defendant refused to file and record the charter, whereupon the plaintiffs filed this suit, praying for a writ of mandamus requiring defendant Hardy to file and record it. The defendant filed in this court the following answer:

"Now comes the respondent herein by his attorney, Thomas S. Smith, Attorney-General of the State of Texas, and demurs to the petition of relators herein for a writ of mandamus, and says that the allegations in the same are insufficient in law to entitle relator to the writ of mandamus against him. And specially excepting to said petition, he says that the same is insufficient in law because,

"First. It appears from the same and 'Exhibit A,' attached thereto, that relators seek to compel respondent to file a charter, under the laws of Texas, for the express purpose of creating a corporation for the transaction of business in a jurisdiction other than that of the State of Texas, to wit, in the town of Ardmore, Chickasaw Nation, Indian Territory, while title 21, Revised Statutes of the State of Texas, only permits the creation of private corporations whose domicile and principal place of business are in the State of Texas, and the purpose of which corporation is the transaction of business in the State of Texas.

"Second. Because the State of Texas has no power to create a corporation the purpose and object of which is the transaction of business beyond the boundaries of the State of Texas in a foreign jurisdiction.

"Third. Because it appears from the face of said petition and said exhibit that said pretended corporation is a fraud both upon the State of Texas and the Indian Territory.

"Fourth. Because it appears from the face of said charter sought to be filed that from the very nature of the business said corporation would be engaged in, that, of necessity, its principal office and place of business would, as a matter of fact, be in Ardmore, in the Indian Territory, outside of and beyond the State of Texas, while article 673, Revised Statutes of the State of Texas, requires 'Each corporation or joint stock company of every description, whether organized and acting under a special charter or general law of the State, shall keep its principal office within this State.' Of which said general demurrer and special exceptions respondent prays judgment of the court and that said petition be dismissed.

"And should said demurrer and special exceptions be overruled, respondent, for further answer to said petition, says that as to the allegations of fact set forth in the same, he admits them to be true, and that he refused to file said charter for the reasons set forth in his said special exceptions. Wherefore, he prays that he be dismissed hence with his costs, and that this court will refuse to issue the writ of mandamus against him as prayed for by relator."

The defendant insists that the charter seeks to create a corporation to do business wholly outside of the State of Texas; that the law of this State does not authorize the formation of such corporations, and does not empower him to record such paper. We think the question

raised by the answer of the defendant is not involved in this case, and we express no opinion as to whether the State may create a corporation with power to transact its business exclusively beyond the territory of Texas.

The charter complies with the law in form, specifying as purposes for which the corporation is organized, (1) "for the purpose of owning, maintaining, and operating a flouring mill, grain elevator, and cotton gins in the town of Ardmore, Chickasaw Nation, Indian Territory; (2) and for the purpose of buying and selling and dealing in grain." The places of business for the said corporation are specified as follows: "The business of said corporation shall be transacted at Gainesville, Cooke County, Texas, and Ardmore, in said Chickasaw Nation." There is a business expressed in the terms of this charter to be done, or which may be conducted at Gainesville, Texas; that is, "the buying and selling and dealing in grain," as well as that to be conducted at its principal office in this State. It can not be said that this corporation has no business to be performed and no home within this State.

Defendant insists that under the charter the principal office must be at Ardmore. The law does not require the charter to state the place where the principal office is to be located, but commands the corporation to establish and maintain it within the limits of this State. We do not agree with the contention of the defendant that the terms of this charter are such as to require its principal office to be beyond the limits of the State in order to carry on the business for which it is organized; on the contrary, the business of buying, selling and dealing in grain, in connection with or independent of the elevator and mill, may be, and, judging from the terms of the charter, will be, conducted both at Gainesville and at Ardmore, in the Indian Territory, and may may be controlled and directed from an office in Texas.

In the case of Franco-Texan Land Company v. Laigle, 59 Texas, 339, the charter provided as follows: "Its principal office for the transaction of business shall be at Weatherford, Parker County, Texas, and that its business might also be transacted at the city of New York and at Paris, France." Chief Justice Willie said: "A private corporation, whose charter has been granted by one State, can not hold meetings or pass votes or have any legal existence in another State. It must dwell in the place of its creation and can not migrate to another sovereignty. * * *

"This prohibition as to the performance of acts outside of the State where chartered refers to acts of a strictly corporate character such as must be discharged by the corporators themselves, such as the original organization, the election of directors, etc. The better opinion is that the mere transaction of such business as is usually done by the directors or other agents of the body may be done as well without the State as within it."

There being in the charter sufficient to constitute a corporation to do business within the limits of the State, the fact that authority is also

conferred upon it to hold property and transact business in the Indian Territory will not render the charter void as a whole. The State can confer authority upon a corporation to do business in this State and to hold property and transact its business within the territory of another State by consent of the latter. If authority to transact the business within the limits of the foreign territory should be denied, the charter would not be void and the corporation would not be without a business, for it might yet perform within this State the business of buying, selling, and dealing in grain.

It is therefore ordered that the peremptory writ of mandamus issue to the Secretary of State, commanding him to file and record the charter presented by the plaintiffs, and to issue the certificate required by law.

*Writ of mandamus granted.*