HELMS v. TELEGRAPH COMPANY.

(Filed December 18, 1906).

*Telegraphs—Mental Anguish—Evidence—Damages—*
*Undisclosed Beneficiary.*

1. In an action for damages for mental anguish on account of defendant's failure to promptly deliver the following telegram: "Mother very sick; come at once," signed by plaintiff's son, where the evidence shows that plaintiff's son, twenty-six years old, filed the telegram with the defendant's operator, who asked for the number and street of the sendee; that the son told the operator that he did not know the address, but that his father knew it; that he went back to his father and got the address; that the operator knew the son and his father; that the son told the operator that the sendee was his brother-in-law; that the plaintiff sent his son to send the telegram and gave him the money to pay for it, but the son failed to so inform the operator: *Held*, there was no evidence which charged the defendant with knowledge that the son filed the telegram as agent of and for the benefit of his father.

2. A party who is not mentioned in a message or whose interest therein is not communicated to the company cannot recover substantial damages for mental anguish.

CLARK, C. J., dissenting.

ACTION by M. A. Helms against Western Union Telegraph Company, heard by *Judge R. B. Peebles* at the October Term, 1906, of the Superior Court of MECKLENBURG.

This action was instituted by the plaintiff to recover damages for mental anguish on account of the failure of the defendant to promptly deliver to his son-in-law, at Charlotte, N. C., a message which the plaintiff had sent through John Helms from Pineville, N. C., in the following words:

"WILL HELMS, *Charlotte, N. C.*

"Mother very sick. Come at once.

"(Signed)     JOHN HELMS."

From verdict and judgment rendered, defendant appealed.

*Burwell & Cansler* for the plaintiff.
*Tillett & Guthrie* for the defendant.

Brown, J.   The exceptions of the defendant to the evidence and to the charge of the Court raise two questions for our consideration: 1. Is there any evidence which charges the defendant with knowledge that John Helms filed the telegram as the agent of and for the benefit of his father, M. A. Helms? 2. Can this plaintiff sustain an action for damages for mental anguish without proving such fact?

As to the first contention of the defendant, we think the evidence tends to prove that John Helms, twenty-six years old, and the son of M. A. Helms, filed the telegram with the operator at Pineville; that the operator asked for the number and street of the sendee; that John Helms said he did not know it; that the operator said he could not send the message until he got the address; that John Helms went back to his father and got the address; that he told the operator that his father knew the street number; that the operator knew John Helms and also knew the plaintiff; that John Helms told the operator that the sendee, Will Helms, was his brother-in-law, and that the plaintiff sent John Helms to send the message and gave him the money to pay for it, but John Helms failed to so inform the operator.

We think there is nothing in the evidence which could reasonably charge the defendant with knowledge that the plaintiff was the real beneficiary and that his son was acting as his agent in sending the message.   There is nothing in the evidence or on the face of the message which charges the defendant with notice that M. A. Helms, the plaintiff, may suffer mental anguish if the telegram is unreasonably delayed. *Tel. Co. v. Kirkpatrick,* 76 Tex., 217.

As to the second contention, we are likewise of opinion with the defendant.   The overwhelming weight of authority is to the effect that a party who is not mentioned in a message or

whose interest therein is not communicated to the company cannot recover substantial damages for mental anguish. *Squire v. Tel. Co.,* 98 Mass., 237; *Tel. Co. v. Proctor,* 25 S. W. Rep., 813; *Railway v Seals,* 41 S. W., 841; *Elliott v. Tel. Co.,* 75 Texas, 18; *Tel. Co. v. Brown,* 71 Tex., 723.

This doctrine is nowhere more emphatically declared than by the Supreme Court of Texas, where the doctrine of mental anguish is supposed to have originated. In *Tel Co. v. Gotcher,* 53 S. W., 685, that Court affirmed its former ruling to the effect that a party whose interest in the telegram was not made known to the company could not recover. There appears in this opinion the significant statement by the Court that the Court had "already expressed its disinclination to extend the right of recovery in this class of cases beyond the limits already fixed by the decisions of this Court." In *Davidson v. Tel. Co.,* 54 S. W., 830, and *Morrow v. Tel. Co., ibid.,* 853, the Court of Appeals of Kentucky held that a party whose name was not mentioned in the message could not recover for mental anguish.

In *Rogers v. Tel. Co.,* 51 S. E., 773, the Supreme Court of South Carolina, after referring to the rule of *Hadley v. Baxendale* as controlling these mental anguish cases, then proceeded to hold that the party whose interest was not disclosed could not recover. The headnote correctly digests the opinion in these words: "Where a husband sends a telegram to his wife's mother, and it does not show on its face that it is for the benefit of his wife, and it is not alleged in the complaint that the telegraph company had notice that the telegram was sent for the benefit of the wife, the complaint fails to show that she was entitled to damages for failure to deliver."

In *Poteet v. Tel. Co.* (S. C.), 55 S. E., 113, *Mr. Justice Woods,* speaking for that Court, discusses the matter with much clearness of expression: "In cases of this character the suit is usually for the tort committed in breach of the public

duty owed to the plaintiff; but the duty springs out of the contract and depends on it, for manifestly the defendant owes no public duty concerning a particular telegram except to those for whom or in whose behalf it has undertaken to transmit it. All others are of the outside public, and damages which they incidentally suffer cannot by any stretch be regarded the natural and proximate result of failure to transmit a particular telegraphic message. The contract fixes the relation, and he who sues for tort based on contract must show privity with the party to be charged by connecting himself with the contract as a party or a known beneficiary. In further support of this view, it may be remarked that as to the subject-matter of a telegram it is too well established for discussion, before there can be a recovery the telegraph company must have notice that the particular result alleged as the basis of the claim was to be apprehended from delay in transmission. The same principle makes it necessary to recovery that there should be notice to the company of the beneficial interest of the particular person who claims compensation for suffering." In his opinion the learned Justice cites a large number of authorities in support of his views.

The right of the sendee to recover of a telegraph company for error or negligence in the transmission or delivery of a telegram is altogether denied in Great Britain. *Playford v. Tel. Co.*, L. R., 4 Q. B., 706. In this country the English doctrine does not generally prevail. Here the weight of authority holds that the sendee may recover in his own name such damage as he may have sustained by reason of negligence when the message was intended for his benefit and it was apparent on the face of the message or the company otherwise had knowledge of it. 2 S. & R. Neg. (5 Ed.), sec. 543; Joyce Elec. Law, sec. 1008; *Frazier v. Tel. Co.*, 67 L. R. A., 320.

The same principle applies where the message is sent for the benefit and at the instance of any one whose name does

not appear on its face. The well-known rule laid down in *Hadley v. Baxendale,* 9 Exch., 345, decided in 1854, has been applied by the Supreme Court of the United States to telegraph cases, and it is held that where· the telegraph company is not informed of the nature of the transaction to which the message relates, or of the position which the plaintiff in the action would probably occupy, the measure of damages for negligence is the sum paid for sending. *Primrose v. Tel. Co.,* 154 U. S., 29; *Hall v. Tel. Co.,* 124 U. S., 444.

Our own Court has adopted the same principles of law as applicable to this class of cases. In a well-considered opinion in *Williams v. Tel. Co.,* 136 N. C., 82, *Mr. Justice Walker* says: "The principle uniformly sustained by the cases upon the subject, some of which we have cited, is that, unless the meaning or import of a message is either shown by its own terms or is made known by information given to the agent receiving it in behalf of the company for transmission, no damages can be recovered for failure to correctly transmit and deliver it beyond the price paid for the service." In *Cranford v. Tel. Co.,* 138 N. C., 162, the plaintiff was not permitted to. recover because her interest in the telegram was not shown upon the face of it and was not brought to the attention of the company, and it is specifically held that "there can be no recovery of damages for delay in the transmission and delivery of a telegram when it does not appear in any way that the plaintiff was the intended beneficiary of the message." See also *Kennon v. Tel. Co.,* 126 N. C., 232.

In conclusion, we regard it as well settled in this Court now as well as in all other courts whose decisions we have examined, that where there is a delay in the delivery of a telegram, the telegraph company is not liable for the mental anguish of every one suffering by the failure to deliver the message, but only to those for whom or in whose behalf it has undertaken to transmit it. We will not undertake to recon-

cile *Cashion's case,* 124 N. C., 459, with the principles herein
laid down.    Whatever there may be that is conflicting with
them in that case we regard as having been heretofore disre-
garded and practically overruled.    We are of opinion that
the plaintiff is entitled to recover nominal damages only,
viz., the price paid for the message.

New Trial.

CLARK, C. J., dissenting: On 18 December, 1905, the
plaintiff's wife became ill at their home in Pineville, N. C.,
and the plaintiff directed his son, John Helms, to go to the
telegraph office and send a message to his son-in-law, Will
Helms, who resided in Charlotte, and tell him that plaintiff's
wife was very sick, and wanted him to come, and come at
once.    Accordingly John Helms delivered for transmission
the following telegram:

"WILL HELMS, *Charlotte, N. C.*
    "Mother very sick.    Come at once.        JOHN HELMS."

The jury found that the defendant negligently delayed the
transmission of this telegram, and the defendant's brief states
the facts as above and adds that there is no question raised on
this appeal as to the negligence.    The plaintiff brought this
suit to recover damages for mental anguish caused by the
failure of the said Will Helms and also the wife of Will
Helms (she being the daughter of the plaintiff) to reach the
bedside of the plaintiff's wife before her death, and be present
with him after that time.    It was in evidence that the plain-
tiff sent his son, John Helms, to the telegraph office for the
purpose of sending said message and gave him the money to
pay for it; that the operator knew John Helms and his father
and their relationship; that the operator refused to send the
message without information as to the street number of
sendee, and that thereupon John Helms said that he would

go back to the house of his father and get the address, which he did, and gave it to the operator.

The chief defense relied on is that it does not appear that the operator was told (except inferentially) that the message was sent by John Helms, as agent for his father. When a telegraph company fails to deliver a message or to deliver it promptly, this is more than a breach of private contract, for the company could not refuse to accept and send the message. It is a tort and a breach of a public duty. It is commonly described as a tort arising out of a breach of contract.

In *Green v. Tel. Co.,* 136 N. C., at p. 492, *Douglas, J.,* said, speaking for a unanimous Court: "In the words of a great English Judge, 'a breach of this duty is a breach of the law, and for this breach an action lies, founded on the common law, which action wants not the aid of a contract to support it.' This has been expressly held by this Court in *Cashion v. Tel. Co.,* 124 N. C., 459; *Laudie v. Tel. Co., ibid.,* 528, and *Cogdell v. Tel. Co.,* 135 N. C., 431."

Whether the message, as to which there is such default, is one whose default causes pecuniary loss or mental anguish, the party entitled to sue must be the "real party in interest," and comes within one of two categories: either (1) a party to the contract or (2) a beneficiary named therein.

1. He may be a party to the contract by being either the sender whose name is signed to the message, or the principal (whether disclosed or not) who paid for the message or by whose order the message was sent. Whether the breach caused pecuniary loss or mental anguish, the telegraph company must have contemplated that damages would accrue to the real sender of the message. *Qui facit per alium facit per se.* Whether his name was signed to the message or not, it is the damage that would accrue to *him,* if any, which the company contemplated that it would incur by its negligence. It is not to be thought that a public corporation would be more

faithful in sending a message for one party than another. *Tel. Co. v. Broesche,* 72 Tex., 654. Very frequently the signer of the message (as in this case) is a mere agent, a messenger, and in such cases he receives no damages and can recover none. The company is not thereby shielded, but is responsible to the "real party in interest," the principal, by whose order the message was sent, for the damage he sustained, whether pecuniary loss or mental anguish, when the face of the message disclosed that the failure to deliver would be likely to cause the loss of money, *Cannon v. Tel. Co.,* 100 N. C., 300, or mental suffering, *Young v. Tel. Co.,* 107 N. C., 372. That is the gist of it. The real sender of the message is entitled to recover whether his name is signed thereto or an agent signs his own name. Whether the real or the nominal sender is the plaintiff is a mere matter of proof, as is the plaintiff's relationship to the sick or dying person named in the message. When that is shown, it is his loss, of course, which is the measure of damages. He is the real contracting party.

2. Sometimes the sender of the message, whether he sends it in his own name or sends it in the name of his agent, is not the real party in interest. In such case the sender cannot sue, *Pegram v. Tel. Co.,* 100 N. C., 36; but the beneficiary of the message may, if the fact that he is the beneficiary appear upon the face of the message. This may be either the sendee or one named in the message. This is upon the principle laid down in *Gorrell v. Water Co.,* 124 N. C., 328, and cases following it, "that one for whose benefit a contract is made may sue for its breach or its enforcement."

Thus, either (1) the maker of the contract, whether he contracts in his own name or in the name of an agent, can sue for whatever damage he sustains, or (2) the beneficiary of the contract who is contemplated as such on the face of the message, can sue. Of course, a person who is neither a party, as

principal or agent, to the contract, nor a beneficiary named therein, cannot recover. *Cranford v. Tel. Co.*, 138 N. C., 164.

Accordingly, our reports show that in the great majority of the cases the action has been brought by the beneficiary named in the message, usually the sendee, but sometimes one referred to in the message. In the other cases, the action has always been brought by the contracting party—this being sometimes the signer of the message and sometimes the undisclosed principal, with whose money or by whose order the telegram was delivered to the telegraph company for transmission.

The action was brought by—

Sender: *Kennon v. Tel. Co.*, 126 N. C., 232; *Bennett v. Tel. Co.*, 128 N. C., 103; *Bright v. Tel. Co.*, 132 N. C., 318; *Williams v. Tel. Co.*, 136 N. C., 82; *Green v. Tel. Co. ibid.*, 506; *Hancock v. Tel. Co.*, 137 N. C., 499; *Hall v. Tel. Co.*, 139 N. C., 370; *Gerock v. Tel. Co.*, 142 N. C., 22; *Hancock v. Tel. Co.*, 142 N. C., 163.

Sender and sendee: *Andrews v. Tel. Co.*, 119 N. C., 404; *Dowdy v. Tel. Co.*, 124 N. C., 523; but it has been since strongly intimated that it is a misjoinder for two persons, suing each for his own mental suffering, to unite in the same action, *Morton v. Tel. Co.*, 130 N. C., 303.

Undisclosed principal of sender, seven cases: *Thompson v. Tel. Co.*, 107 N. C., 450; *Cashion v. Tel. Co.*, 123 N. C., 269; *s. c.*, 124 N. C., 464 (fully discussed); *Laudie v. Tel. Co., ibid.*, 532; *Laudie v. Tel. Co.*, 126 N. C., 434; *Hood v. Tel. Co.*, 135 N. C., 622; *Hamrick v. Tel. Co.*, 140 N. C., 151 (in this last a new trial was given on another point, but there was no objection on this point suggested by the Court).

Sendee: *Young v. Tel. Co.*, 107 N. C., 371; *Thompson v. Tel. Co., ibid.*, 456; *Brown v. Tel. Co.*, 111 N. C., 187 (pecuniary loss); *Lewis v. Tel. Co.*, 117 N. C., 436; *Havener v. Tel. Co., ibid.*, 541; *Lyne v. Tel. Co.*, 123 N. C., 130; *Hend-*

*ricks v. Tel. Co.,* 126 N. C., 305; *Rosser v. Tel. Co.,* 130 N. C., 251; *Hunter v. Tel. Co., ibid.,* 607; *Meadows v. Tel. Co.,* 131 N. C., 74; *s. c.,* 132 N. C., 41; *Efird v. Tel. Co., ibid.,* 268; *Hinson v. Tel. Co., ibid.,* 460; *Higdon v. Tel. Co., ibid.,* 726; *Bryan v. Tel. Co.,* 133 N. C., 604; *Cogdell v. Tel. Co.,* 135 N. C., 431; *Hunter v. Tel. Co., ibid.,* 459; *Dayvis v. Tel. Co.,* 139 N. C., 82; *Alexander v. Tel. Co.,* 141 N. C., 76; *Whitten v. Tel. Co., ibid.,* 362; *Mott v. Tel. Co.,* 142 N. C., 532; *Harrison v. Tel. Co., ante; Shepard v. Tel. Co., ante.*

Beneficiary named in message (these are really cases of disclosed principals, but who neither paid for nor ordered the sending of the messages): *Sherrill v. Tel. Co.,* 109 N. C., 527; *s. c.,* 116 N. C., 656; *s. c.,* 117 N. C., 354; *Green v. Tel. Co.,* 136 N. C., 489; *Carter v. Tel. Co.,* 141 N. C., 375; *Kernodle v. Tel. Co., ibid.,* 437.

In *Cranford v. Tel. Co.,* 138 N. C., 165, it is clearly shown that one who suffers loss (it must be immaterial whether it is a money loss or mental suffering) by the failure to deliver a telegram cannot recover damages on that account unless he also shows that he is a party to the contract (either as sender or as principal) or beneficiary (by being named therein or the sendee). The language of the Court is, after quoting *Cashion v. Tel. Co.,* 123 N. C., 267, and 124 N. C., 459, and *Laudie v. Tel. Co.,* 124 N. C., 528: "In each of those cases we need only say, without discussing the principle upon which they rest, there was abundant evidence to show that the message was sent for the benefit of the plaintiff" (the undisclosed principal) "the sender merely acting as her agent, while in this case there is no such evidence."

That language exactly applies here. The principle stated in those cases cited in *Cranford's case* has been recognized by this Court seven times, as above stated. It is reasonable, logical and just, and there is no reason why we should overrule

them. Besides the seven decisions above referred to, it was said in *Sherrill v. Tel. Co.,* 109 N. C., 533: "The plaintiff can therefore maintain this action both because his sister was his agent for the purpose of sending the telegram and because he was the beneficial party." Yet in that case the plaintiff had not directed the sending, and paid for the message, as in this case, but had merely left authority to telegraph in case of sickness, and had no knowledge of the message being sent until long afterwards. "The message may be written out, signed and delivered by an agent." Scott & Jarnagan on Telegraphs, 161. "The contract is not necessarily with the party whose name is signed to the message." *Ibid.,* 177.

Here, the evidence discloses that in truth the plaintiff sent the message through the agency of his son, and paid for it. The relationship of the principal and his agent was known to the operator. The message concerned the critical illness of the plaintiff's wife and was sent to the husband of his daughter, and John Helms told the operator that he "would go back" to his father and get the sendee's street number, and did so. All these were pregnant circumstances to give the defendant notice that the message was sent by the plaintiff's order. But, if that were not so, the above authorities, several in number, hold, unless all are overruled, that the plaintiff, if an undisclosed principal, can recover for the default in the delivery of a message. The defendant relies upon *Cranford's case,* 138 N. C., 165. But that case, instead of overruling *Cashion's* and *Laudie's cases,* cites them as not being in conflict with itself. *Cranford's case* rested on three propositions: (1) That the message, so far as the evidence disclosed, was sent solely for the benefit of the husband of the plaintiff; (2) that there was no evidence that the defendant knew that such a person as the *feme* plaintiff existed; (3) that there was no evidence that the message was

sent for her benefit. The lack of evidence in the foregoing particulars was the controlling factor in the decision of that case.

In the case at bar it affirmatively appears by the uncontradicted evidence (1) that the message was sent and paid for by the plaintiff; (2) that the operator knew the relationship between John Helms and the plaintiff, and his attention was called to it before the message was sent, by the son saying he "would go back" to his father and get the sendee's street number; and (3) that the message was sent for the plaintiff's benefit. In *Cranford's case* it is said: "Nor is there any evidence that the message was in fact intended for the benefit of the *feme* plaintiff. The defect in the proof last mentioned is sufficient of itself to defeat the plaintiff's recovery."

To sum up, it is not necessary that the company should have notice, at the time, who is the real sender. Its duty is the same, whether the sender, sendee or principal of the sender is the "real party in interest." It is sufficient if the telegram on its face gives notice that failure to deliver will cause mental suffering or pecuniary loss, and that at the trial the evidence shall show that such damages accrued to the plaintiff, who shall further show that he was the real (not the mere nominal) sender of the dispatch, or that it was sent for his benefit as sendee or beneficiary named in the message. That the undisclosed principal can recover is held, *Harkness v. Tel. Co.*, 73 Iowa, 190, 5 Am. St., 672; *Tel. Co. v. Broesche*, 72 Tex., 654, 13 Am. St., 843.

No case has been cited and it is believed that none can be found which denies the right of the real sender, he who orders the message sent and pays for it, to recover damages for failure to deliver, whether he was known to the company or not, and whether the damages are for money lost or mental suffering, caused by the defendant's negligence. At least seven times this Court has ruled that such principal, being the

real party to the contract, can recover.   The cases cited in the opinion of *Brown, J.,* of *Morrow v. Tel. Co.,* and the others, which hold that a plaintiff whose name is not mentioned in the message cannot recover, refer to *beneficiaries* of the message, and are in exact accord with what is said in this dissent.   Those decisions do not disqualify the real party to the contract, the principal who paid for and sent the message, and whose agent signed it.   This view is sustained by the text and cases cited in Jones Telegraphs, sec. 469.

*Tel. Co. v. Broesche,* 72 Tex., 654, holds that it is immaterial that the telegraph company is not informed by the signer of the message that it is sent in behalf of and paid for by an undisclosed principal.   The company is liable to the latter for any mental anguish caused by its negligence.