NAMQUIT WORSTED CO. v. WHITMAN et al.

(Circuit Court of Appeals, First Circuit. February 26, 1915.)

No. 1061.

1. PRINCIPAL AND AGENT ⬥183—RIGHT OF ACTION BY AGENT ON CONTRACT.

Where the selling agents of all of the products of the A. Mills made a contract of sale in their own names, on which they were entitled to their commissions, they could sue thereon in their own names, and the suit brought in their names covered the interests of both the agent and the principal.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 691–700; Dec. Dig. ⬥183.]

2. FRAUDS, STATUTE OF ⬥106—SALES ⬥1—SUFFICIENCY OF WRITING.

A contract for the sale of "50,000 lbs. 3-grade white worsted yarn for delivery during Oct., Nov., and Dec., '09, on following basis of prices: 2/32 on dresser spools 97c, 1/24 on bobbins 89c," was not void for indefiniteness or under the statute of frauds; it not appearing that there was any indefiniteness which ordinary trade did not require.

[Ed. Note.—For other cases, see Frauds, Statute of, Cent. Dig. §§ 193, 210, 211; Dec. Dig. ⬥106; Sales, Cent. Dig. §§ 1, 3–5; Dec. Dig. ⬥1.]

Bingham, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Rhode Island; Arthur L. Brown, Judge.

Action by William Whitman and others against the Namquit Worsted Company. Judgment for plaintiff (206 Fed. 549), and defendant brings error. Affirmed.

The action was on a contract for the sale of—

"50,000 lbs. 3-grade white worsted yarn for delivery during Oct., Nov., and Dec., '09, on following basis of prices:

2/32 on dresser spools, 97c.
1/24 on bobbins, 89c."

Rathbone Gardner, of Providence, R. I. (Henry W. Gardner and Gardner, Pirce & Thornley, all of Providence, R. I., on the brief), for plaintiff in error.

Frank H. Swan, of Providence, R. I. (Francis B. Keeney and Edwards & Angell, all of Providence, R. I., and A. H. Chamberlain, of Boston, Mass., on the brief), for defendants in error.

Before PUTNAM, DODGE, and BINGHAM, Circuit Judges.

PUTNAM, Circuit Judge. [1] This case was submitted to the District Court with the statutory waiver of a jury. The plaintiffs, now the defendants in error, executed the contract sued on in their own

names   The real principal whom they represented was the Arlington Mills.   The evidence shows that the plaintiffs were selling agents of all its product, and, of course, they were entitled to their commission on the transaction.

By the settled rules of the English courts, which have been adopted in the United States, the plaintiffs were entitled to sue in their own names, both because they executed the contract in their own names, and because they had an interest in the contract to the extent of their commission.   The rule is exceptional, as stated in Chitty on Contracts (11th American Ed.) pp. 316, 317, and also as stated more fully in Mechem on Agency (2d Ed.) § 2024.   In the notes to the latter there is a list of cases showing that the rule has been fully adopted by the courts in the United States.   As it appears in the authorities cited, the suit brought in the name of an agent covers the interests of both agent and principal; and the form of proceedings is anomalous, as shown by Mechem, and also in Colburn v. Phillips, 13 Gray (Mass.) 64, 66.   On the latter account, the practice shows that the pleadings which were made in this case are sufficient; and we add no comment in reference to them.

Where there are so many errors assigned in comparison with the substantial matters in question as we find here, each will, as usual, be treated briefly.   The first point made by the plaintiff in error is based on the proposition that there is no evidence that the plaintiffs were agents of the Arlington Mills.   The court found that J. H. Merrill, who signed the contract with the plaintiffs, "was duly authorized to sign, and did sign, on behalf of the Namquit Worsted Company." The contract itself which Merrill signed used the words, "from Arlington Mills," and the court found that the parties had previously executed contracts similar to this one, and had had extensive dealings of a similar character.   We think, therefore, there can be no doubt that the Namquit Company assumed and understood that the contract was for the benefit of the Arlington Mills.

The point is also made that the damage alleged was not capable of being estimated under the contract and the testimony; but, in view of the fact that the court adopted the lowest scale of damages suggested in the case, there is no difficulty on this point.   Nor do we find any difficulty in the other matter of fact which was made an element in the errors assigned that a certain approval of the plaintiffs was lacking.

[2] The other errors assigned involve questions of law relating to the alleged indefiniteness of the contract and to the statute of frauds. All of these were sufficiently considered by the District Court.   It is not pointed out to us particularly where this indefiniteness and the statute of frauds require anything not supplied.   The ordinary necessities of trade often demand an indefiniteness of terms, both with reference to the statute of frauds and otherwise, to which the law yields. This is illustrated everywhere; and it is peculiarly illustrated by the decision of this court in Church v. Proctor, 66 Fed. 240, 13 C. C. A. 426, in an opinion passed down on February 2, 1895, where it was held that a contract to supply for a stated price what menhaden certain fishermen might land at a particular wharf until the purchasers "get

their slivering for the year" was valid for all purposes. On reading the contract in this case, we find no indefiniteness which ordinary trade does not require, or which exceeds that brought out in Church v. Proctor and like instances.

The judgment of the District Court is affirmed, with interest; and the costs of appeal are allowed to the defendants in error.

BINGHAM, Circuit Judge (dissenting). In the District Court it was ruled that it was only equitable the defendants should be required to pay as damages the difference between the contract price and the cost of spinning the yarn in such one of the ways stipulated in the contract as would produce the least profit, and the plaintiffs were allowed to recover as damages the difference between the cost of manufacture to the Arlington Mills of yarn so spun and the contract price of that article. I am unable to agree to this proposition. There was no evidence as to what the market price of yarn so spun was, whether greater or less than the contract price, or that the Arlington Mills were under contract with the plaintiffs to manufacture and sell the yarn to them at the cost of manufacture to it, or that the plaintiffs were entitled to commissions, or that they suffered any damages by reason of the breach of the contract. The plaintiffs were not manufacturers, and consequently could not allege or prove facts entitling them to a manufacturer's profit. The Arlington Mills did not bring the action, and if it had, to entitle it to recover the special damage here in question, it would have been necessary for it to allege and prove that it was the principal for whom the plaintiffs were acting in making the contract, that the defendants knew they were its agents, and that it was to manufacture the yarn sold. Furthermore, it is not found that at the time of making the contract the defendants knew the plaintiffs were acting as agents for the Arlington Mills. Special damages of this nature are only recoverable where it is shown that they were within the contemplation of the parties at the time the contract was made. Primrose v. Western Union Telegraph Co., 154 U. S. 1, 29, 14 Sup. Ct. 1098, 38 L. Ed. 883; Western Union Telegraph Co. v. Hall, 124 U. S. 444, 8 Sup. Ct. 577, 31 L. Ed. 479; Helms v. Western Union Telegraph Co., 143 N. C. 386, 55 S. E. 831, 8 L. R. A. (N. S.) 249, 118 Am. St. Rep. 811, 10 Ann. Cas. 643; Rogers v. Western Union Telegraph Co., 72 S. C. 290, 51 S. E. 773; Pacific Express Co. v. Redman (Tex. Civ. App.) 60 S. W. 677; Western Union Telegraph Co. v. Kerr, 4 Tex. Civ. App. 280, 23 S. W. 564.